## STATE OF CONNECTICUT v. EDWARD VITALE
## (9668)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

---

Argued February 2—decision released May 31, 1983

*Richard Emanuel,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Michael Dearington,* assistant state's attorney, for the appellee (state).

SHEA, J. Upon an indictment charging the defendant with murder, the jury found him guilty of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1). The defendant has appealed from the judgment claiming (1) that the loss of the court reporter's notes during portions of the jury selection, as well as the failure of the reporter to record the closing arguments of counsel, deprived him of his constitutional right of appellate review of the entire proceedings in the trial court; (2) that his right to a trial by an impartial jury was violated by the denial of his

motions to change venue, to exclude veniremen from two towns where newspaper accounts of the crime had been widely circulated, and to declare a mistrial; (3) that his right to counsel was infringed by allowing into evidence certain admissions which he made to the police after being arrested for an unrelated offense; and (4) that he was entitled to a charge refused by the court upon assault in the first degree as a lesser offense included in the murder indictment.[1] On the present state of the record we find no error. We remand for further proceedings, nevertheless, to allow the defendant an opportunity to perfect the record in order to present any claims of error related to the jury selection proceedings.

There is no significant dispute about the facts which the jury could reasonably have found in support of their verdict. On October 29, 1977, at about 2 p.m., the body of Donald E. Lesse was discovered floating in the Connecticut River in Cromwell. He had last been seen alive the previous afternoon.

After an autopsy, the state medical examiner determined that Lesse had died twenty-four to forty-eight hours prior to the discovery of his body and that his death had resulted from multiple gunshot wounds to

---

[1] During argument the defendant withdrew a further claim that the charge was defective because it included the remark, "[e]very person is presumed to intend the natural and necessary consequences of his act," which was found objectionable in *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). As the defendant recognizes, this statement in the charge was followed by virtually the same *permissive inference* language which we have found in many previous cases to overcome the effect of the earlier reference to a *presumption* of intent from conduct. See *State* v. *Mason,* 186 Conn. 574, 583, 442 A.2d 1335 (1982); *State* v. *Cosgrove,* 186 Conn. 476, 481, 442 A.2d 1320 (1982).

The defendant also withdrew his claim of constitutional error, which was based upon the failure to include the statutory definition of "intent," General Statutes § 53a-3 (11), in the charge. A similar situation was resolved unfavorably to the defendant in *State* v. *Mason,* supra, 585–87.

the head, chest and extremities. Three bullets were re-trieved from the body of the victim, consisting of two .38 caliber fragments, a .38 caliber "wad cutter" and a .32 caliber copper-jacketed bullet.

There was evidence that the defendant often carried two guns, one of which was a .38 caliber weapon which used "wad cutter" ammunition. Lesse frequently carried a .22 caliber revolver and he had been convicted several times for violent crimes. In September, 1977, he had been released from prison, and the defendant, with whom he was previously acquainted, had offered him a job at a private social club in Meriden which the defendant managed. Lesse was permitted to live at the club and he did reside there until his death on Friday, October 28, 1977. During his employment of approx-imately one month at the club, Lesse engaged in several activities which upset customers of the club and presumably his employer. He used "strong arm" tactics, sometimes with a gun, to collect delinquent "bar tabs" owed to his employer and often kept the money received. He was accused of sexually assaulting a young woman at the club in the presence of some customers.

There was evidence that on Friday, the day of Lesse's death, the defendant locked the club for the evening. Later he commented to a bartender, for whose services that evening he had made arrangements on the previous day, that business was slow and that Lesse had left town. The very next day the defendant employed at the club two men who replaced a piece of missing carpet, removed bullets from a wall, repaired bullet holes, and washed away blood stains extending from the floor to the ceiling on part of a wall. The defendant remarked that one of the bullets removed from a wall "must have been the one that went into his leg." The defendant also requested one of the men to dispose of a cardboard box containing blood stained

clothes and carpeting. He later admitted to these men that he had shot Lesse several times, that Lesse had tried to rip him off and that it was necessary to get rid of Lesse.

I

An affidavit of the court reporter states that the stenographic notes taken during the voir dire examination of veniremen on April 16, April 20, April 23, and the afternoon of April 17, 1979, have been lost and cannot be transcribed. Although he concedes that no attempt has been made to reconstruct the missing portions of the jury selection proceedings, the defendant claims that it is practically impossible to do so and that he is automatically entitled to a new trial because of the possibility that some error may have occurred which cannot be properly reviewed in the absence of a transcript. Some of the federal courts have held that where a defendant is represented by new counsel on appeal, as in this case, a presumption of prejudice sufficient to mandate a new trial arises whenever there is a substantial and significant omission in the transcript. *United States* v. *Taylor,* 607 F.2d 153, 154 (5th Cir. 1979), remanded in part, 631 F.2d 419 (5th Cir. 1980); *United States* v. *Brumley,* 560 F.2d 1268, 1281 (5th Cir. 1977); *United States* v. *Selva,* 559 F.2d 1303, 1305 (5th Cir. 1977). The majority rule, however, is that the absence of a portion of the transcript does not warrant a new trial unless the proceedings cannot be sufficiently reconstructed to allow effective appellate review of the claims raised by the defendant. *State* v. *Stafford,* 223 Kan. 62, 64, 573 P.2d 970 (1977); *Smith* v. *State,* 291 Md. 125, 137, 433 A.2d 1143 (1981); *Commonwealth* v. *Harris,* 376 Mass. 74, 77–79, 379 N.E.2d 1073 (1978); *People* v. *Glass,* 43 N.Y.2d 283, 286–87, 372 N.E.2d 24 (1977).

Although an available transcript must ordinarily be furnished to an indigent defendant, or at least the portions thereof which are relevant to any possible claim of error; *Hardy* v. *United States,* 375 U.S. 277, 279, 84 S. Ct. 424, 11 L. Ed. 2d 331, motion for modification denied, 376 U.S. 936, 84 S. Ct. 790, 11 L. Ed. 2d 657 (1964); *Coppedge* v. *United States,* 369 U.S. 438, 446, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962); "[a]lternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise." *Draper* v. *Washington,* 372 U.S. 487, 495, 83 S. Ct. 774, 9 L. Ed. 2d 899 (1963).

We are not persuaded that an effort to reconstruct any part of the voir dire which might be the subject of a claim of error would be fruitless or unduly onerous.[2] Such an attempt has been successful in providing a sufficient record in the form of a stipulation by the parties of the pertinent facts and circumstances of the April 16, 1979, hearing of the defendant's motion to transfer prosecution, for which the stenographic notes were also unavailable. With respect to the voir dire examination, the possible claims of error which might be raised on appeal are greatly curtailed by the circumstance that the defendant appears not to have exhausted all of his peremptory challenges.[3] "Where a prisoner has failed to exhaust his right of peremptory challenge, it is no ground for granting him a new

---

[2] The defendant does not indicate what efforts have been made to enlist the assistance of trial counsel in reconstructing the missing portions of the voir dire. Trial counsel, of course, would remain under a duty to cooperate in such an endeavor.

[3] The defendant claims to have used sixteen or seventeen peremptory challenges. Our review of the jury selection records maintained by the clerk, which are contained in the trial court file, indicates that the defendant exercised no more than sixteen of his eighteen peremptory challenges. See General Statutes § 54-82h (a). In any event, it is clear that the defendant did not exhaust his peremptory challenges.

trial that a challenge for cause was overruled." *State* v. *Smith,* 49 Conn. 376, 379 (1881); *State* v. *Hoyt,* 47 Conn. 518, 529 (1880). "The right to challenge is the right to reject, not to select a juror." *Hayes* v. *Missouri,* 120 U.S. 68, 71, 7 S. Ct. 350, 30 L. Ed. 578 (1887). Unless all his peremptory challenges have been exercised before the completion of jury selection, it is presumed that no juror was permitted to serve whom the defendant regarded as biased or unsuitable, although he might have preferred others. See *Stroud* v. *United States,* 251 U.S. 15, 21, 40 S. Ct. 50, 64 L. Ed. 103 (1919), reh. denied, 251 U.S. 380, 40 S. Ct. 176, 64 L. Ed. 317 (1920); *Spies* v. *Illinois,* 123 U.S. 131, 168, 8 S. Ct. 21, 31 L. Ed. 80 (1887); *Hopt* v. *Utah,* 120 U.S. 430, 436, 7 S. Ct. 614, 30 L. Ed. 708 (1887); *United States* v. *Ragland,* 375 F.2d 471, 475 (2d Cir. 1967); annot., 72 A.L.R.2d 905, 908–909; 47 Am. Jur. 2d, Jury § 218.

We hold that the unavailability of the transcript of portions of the voir dire proceedings, which has resulted from no fault of the parties, does not warrant a new trial unless those proceedings which might be the basis for a claim of error cannot be sufficiently reconstructed for that purpose. *Commonwealth* v. *Harris,* supra, 77. Until there has been an appropriate showing that such reconstruction cannot be accomplished, the conviction of the defendant must stand. *People* v. *Glass,* supra, 286. In view of the defendant's admission that no effort has been made to reconstruct the missing voir dire proceedings, the case must be remanded to the trial court to provide an opportunity to do so. *Commonwealth* v. *Harris,* supra, 79–80; but cf. *Smith* v. *State,* supra, 138 (judgment of conviction affirmed where defendant made no effort to reconstruct proceedings); *People* v. *Glass,* supra. We must defer consideration

of any possible claims of error related to the unrecorded portions of the voir dire until such a further proceeding in the trial court has been completed.

With respect to the further claim of the defendant that the unavailability of a transcript of the closing arguments also requires a new trial, it appears that no request was made by counsel that these arguments be recorded. General Statutes § 51-61 requires a court reporter to "attend the court and make accurate records of all proceedings in the court, *except the arguments of counsel* . . . ." (Emphasis added.) We take judicial notice of the practice ordinarily followed in the trial courts of this state under which the court reporter remains in attendance during argument, prepared to record any objection or interruption which may occur in the course thereof, but does not record the remarks of counsel unless so directed by the court. The defendant must have realized that the closing arguments were not being recorded and must be deemed to have assented to that procedure. We have frequently refused to consider claims of improper argument where the remarks of counsel have not been transcribed and could not be reconstructed. *State* v. *Sawicki,* 173 Conn. 389, 396, 377 A.2d 1103 (1977); *State* v. *Paluga,* 171 Conn. 586, 598, 370 A.2d 1049 (1976); *State* v. *Vega,* 163 Conn. 304, 308, 306 A.2d 855 (1972). We have also held that the failure to except to improper argument promptly constitutes a waiver of the right to press such a claim of error. *Cascella* v. *Jay James Camera Shop, Inc.,* 147 Conn. 337, 343, 160 A.2d 899 (1960). The absence of any objection whatsoever to the closing arguments in this case strongly suggests either that no impropriety occurred or that the defendant waived his right to object to any impropriety. We see no sufficient reason to permit the defendant a

further opportunity to reconstruct the closing arguments. See *State* v. *Albin,* 178 Conn. 549, 555–56, 424 A.2d 259 (1979).

## II

The defendant claims no deficiency in the record which would materially handicap appellate review of the denial of his motions to transfer prosecution, exclude veniremen, and order a mistrial.

The motion to transfer sought the removal of the case from the New Haven to the Middlesex judicial district on the ground that the defendant could not receive a fair trial in New Haven because of extensive publicity from a newspaper with a substantial circulation in Meriden and Wallingford. The newspaper articles related to another trial which took place in New Haven in January, 1979, about four months before the trial of the present case, in which the defendant was also accused of murder, but was acquitted. As an alternative to a change of venue, the defendant also moved for the exclusion of veniremen from the towns of Meriden and Wallingford where the pretrial publicity had been greatest.

"When requesting a change of venue, the defendant has the burden of showing that he could not receive a fair and impartial trial." *State* v. *Hart,* 169 Conn. 428, 432, 363 A.2d 80 (1975). Despite the broad discretion vested in the trial court in considering such a motion, its denial has constitutional implications and appellate review requires an independent evaluation of the circumstances upon which the claim of an unfair trial is based. *Sheppard* v. *Maxwell,* 384 U.S. 333, 362–63, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966); *State* v. *Piskorski,* 177 Conn. 677, 685, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). At the hearing on the motion to transfer it was not

disputed that accounts concerning the first murder trial of the defendant appeared in the Meriden Record on thirteen days during the period from January 4 through January 24, 1979. This newspaper had a daily circulation of 28,539, of which 24,806 was in the towns of Meriden and Wallingford. The defendant has not included any of the January newspaper articles in his appendix, which does include three newspaper accounts of the trial of the present case containing some reference to the acquittal of the defendant in the earlier trial. From the sparse information before us concerning the earlier trial, it appears that the defendant successfully maintained that he acted in self-defense when he shot a man, who was much more physically imposing than the defendant, as the result of a quarrel provoked by the victim at a bar in Meriden.

The defendant concedes that the pretrial publicity which was the basis for his motions was less pervasive than in many other cases where we have upheld the denial of a change of venue. See State v. Piskorski, supra, 682–85; State v. Hart, supra, 432; State v. Chapman, 103 Conn. 453, 470, 130 A. 899 (1925). His own presentation indicates that the newspaper articles concerning the earlier trial were not circulated in most of the towns which comprise the New Haven judicial district. The trial court might reasonably have concluded that an impartial jury could be selected from veniremen on the jury list for the New Haven judicial district who came from towns not within the circulation area of the Meriden Record. The defendant virtually concedes this circumstance in arguing that the court should have adopted his alternative proposal to exclude veniremen from Meriden and Wallingford. Although such a procedure might have expedited the selection of a jury by making it unnecessary to inquire about the effect of pretrial publicity on a prospective

juror, we cannot find an abuse of discretion in failing to follow this innovative suggestion of the defendant. The court was entitled to rely upon the voir dire to reveal whether prospective jurors from Wallingford or Meriden were aware of the prior charge against the defendant and whether they would be influenced by such knowledge. *State* v. *Taborsky,* 147 Conn. 194, 214, 158 A.2d 239 (1960). A venireman is not disqualified from serving as a juror merely because he has been exposed to publicity about a case. Ibid.

On two occasions during the voir dire the defendant moved for a mistrial. The occasion for the first motion was the testimony of a venireman that he had overheard a conversation among five other veniremen indicating that the defendant had been recently involved in and tried for another murder. There was evidence that a copy of the Meriden Record which mentioned the first trial was seen in the assembly room for prospective jurors. The second motion was made when another venireman notified the court that she had overheard a similar conversation in the jury assembly room in which one participant referred to the defendant as a "hit" man. The two veniremen who reported these incidents were excused for cause by the court. It is not claimed that any one of the veniremen participating in the conversations, whose identity could not be ascertained, was ultimately selected to serve as a juror. Again, it was not unreasonable for the trial court to assume that the voir dire examination would disclose any prejudice upon the part of a prospective juror.

During the course of the trial the defendant twice moved for a mistrial because of allegedly prejudicial newspaper articles concerning the trial of the present case which also referred to the earlier murder trial of the defendant. The trial court had previously directed the jurors not to read newspaper accounts of the trial

and repeated this caution several times during the trial. The court was entitled to assume that the jurors had followed this instruction.

"The general principle is that a mistrial should be granted only as a result of some occurrence on the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial." *State v. Bausman,* 162 Conn. 308, 312, 294 A.2d 312 (1972). We are not convinced that the trial court abused its discretion in concluding that the circumstances relied on by the defendant did not jeopardize his right to be tried by an impartial jury and in denying his motions for mistrial.

### III

The defendant's claim of a violation of his right to counsel is based upon the introduction in evidence of statements he made to a police officer admitting that he owned two guns, one a .38 caliber and the other a .32 caliber pistol, which were visible in a photograph made an exhibit at the trial, that he carried these guns in a shoulder holster, and that the .32 caliber bullet removed from the victim's body was similar to bullets used in the .32 caliber pistol. The occasion for these admissions was the arrest of the defendant pursuant to a warrant on March 29, 1978, for the unrelated crimes of forgery and larceny, both in the third degree. The standard *Miranda* warning; *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); was given to the defendant who neither requested an attorney nor indicated that he wished to remain silent. A written statement concerning the forgery and larceny charges, which contained a printed *Miranda* warning and waiver form, was executed by the defendant.

In the course of the conversation which transpired, Officer Richard Reposa mentioned the investigation of the shooting of Donald Lesse. He also showed the defendant the photograph of two girls who were holding guns.[4] The defendant said he remembered the photograph and made the admissions concerning the guns which the state presented in evidence. One of the girls shown in the photograph had previously testified that it was taken on October 8, 1977, at the club managed by the defendant and that the guns shown therein belonged to him.

The defendant has not pursued before us the fifth amendment ground for objecting to Reposa's testimony of his admissions which was relied upon in the trial court. He now raises a claim that, although he was not arrested for the Lesse murder until September 7, 1978, almost six months after his arrest on the forgery and larceny charges on March 29, 1978, his right of counsel had, nevertheless, attached on the earlier date when his statements about the guns were made as a result of police inquiry. He seeks to analogize his situation then to that of a defendant who has been formally charged with a crime by indictment or information. From such a defendant the government may not elicit self-incriminating evidence in the absence of counsel.[5] *Massiah v. United States,* 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964).

---

[4] The defendant claims error in the introduction of this photograph also upon the ground that it was merely cumulative of other evidence that the defendant owned hand guns and that it reflected adversely on his lifestyle. The court did not abuse its discretion in concluding that any possible prejudice was outweighed by the significant probative value of the photograph which had been referred to by the defendant in making the claimed admissions.

[5] We do not consider in this opinion whether, if the defendant had been formally charged with the unrelated crimes for which he had been arrested at the time of his admissions, he would be entitled to the protection of *Massiah v. United States,* 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246

Although the present claim is being raised for the first time on appeal, we must consider it because a fundamental constitutional right is undeniably implicated. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). The right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby* v. *Illinois,* 406 U.S. 682, 689, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972). The defendant claims that his arrest on March 29, 1979, upon the warrant for the unrelated forgery and larceny charges should be regarded as the commencement of "adversary judicial criminal proceedings" against him. The view that the arrest itself constitutes the initiation of such proceedings was rejected in *Kirby. Kirby* v. *Illinois,* supra, 689; cf. id., 697–98 (Brennan, J., dissenting.) We have previously adopted the *Kirby* formulation as marking the time when the right to counsel attaches. *State* v. *Ledbetter,* 185 Conn. 607, 609, 441 A.2d 595 (1981); *State* v. *Packard,* 184 Conn. 258, 267, 439 A.2d 983 (1981). We are not persuaded that this critical moment should be advanced to the time of arrest, whether or not a warrant therefor has been issued by judicial authority. *United States* v. *Duvall,* 537 F.2d 15, 22 (2d Cir.), cert. denied, 426 U.S. 950, 96 S. Ct. 3173, 49 L. Ed. 2d 1188 (1976); cf. *United States ex rel. Robinson* v. *Zelker,* 468 F.2d 159, 163 (2d Cir. 1972), cert. denied, 411 U.S. 939, 93 S. Ct. 1892, 36 L. Ed. 2d 401 (1973). "The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has com-

---

(1964), against inquiries concerning this crime. Neither of the parties has discussed this question. See *State* v. *Falby,* 187 Conn. 6, 17, 444 A.2d 213 (1982); *State* v. *Derrico,* 181 Conn. 151, 168, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).

mitted itself to prosecute, and only then that the adverse positions of government and defendant have solidified." *Kirby* v. *Illinois,* supra, 689. The rights of a defendant against self-incrimination prior to the formal commencement of a judicial criminal proceeding against him are, of course, protected by the *Miranda* warning requirements. We see no necessity for superimposing the more complete *Massiah* restrictions during the period between the arrest and the filing of an information or indictment.

## IV

The defendant's final claim of error is the denial of his request to charge upon assault in the first degree; General Statutes § 53a-59 (a) (1); as a lesser offense included in the murder indictment. General Statutes § 53a-59 (a) (1) provides that "[a] person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ." The indictment charged that the defendant "did, with intent to cause the death of Donald E. Lesse, shoot the said Donald E. Lesse thereby causing the said Donald E. Lesse to die" in violation of General Statutes § 53a-54a (a).

"A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the ele-

ment or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980).[6] The defendant's request was properly denied for failure to meet the last of these criteria, at least. The defendant argues that the fact that bullets from two different guns were found in the body of the victim indicates the possibility of another assailant, whose shots may have caused the death, while the bullets fired by the defendant caused merely a serious physical injury. There is nothing in the evidence to indicate that the death was caused by the bullets from one gun as distinguished from the other. No such claim was made in either the request to charge or in the exceptions taken by the defendant. There was also no evidence of any assailant other than the defendant.[7]

---

[6] We see no merit to the defendant's contention that *State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 414 (1980), is inapplicable because the trial took place before that decision was rendered. *Whistnant* did not change prior law but merely clarified the previous position of this court in regard to lesser included offenses. Id., 588 n.12. We see no reason at this time to deviate from the normal application of stare decisis in pending appeals; see *Linkletter* v. *Walker,* 381 U.S. 618, 625–29, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965); *Mickel* v. *New England Coal & Coke Co.,* 132 Conn. 671, 676, 47 A.2d 187 (1946); cf. *Great Northern Ry.* v. *Sunburst Co.,* 287 U.S. 358, 53 S. Ct. 145, 77 L. Ed. 360 (1932). Moreover, we have repeatedly applied *Whistnant* without comment to cases heard in the trial court prior to the release of that decision. See, e.g., *State* v. *Ballas,* 180 Conn. 662, 679, 433 A.2d 989 (1980); *State* v. *Morin,* 180 Conn. 599, 601, 430 A.2d 1297 (1980); *State* v. *Rodriguez,* 180 Conn. 382, 407, 429 A.2d 919 (1980).

[7] In addition to the fact that two different guns were used, the defendant claims that more than one person would have been needed to transport the body of the victim to the river and that the victim had many enemies. Even if other persons were involved in moving the body or may have disliked the victim, it would be sheer speculation to assume that they had participated in shooting him.

We need not consider, therefore, whether the use of the word "shoot" in the indictment necessarily implied the use of a dangerous or deadly weapon as the means of inflicting a serious physical injury upon the victim, as would be required in order to satisfy the second criterion of *Whistnant*.

There is no error in the portion of the appeal we have presently reviewed; the case is remanded to the trial court for further proceedings to reconstruct the missing portions of the voir dire.

In this opinion the other judges concurred.