STATE OF CONNECTICUT *v.* RICHARD AUSTIN
(11136)

PETERS, C. J., HEALEY, PARSKEY, SHEA and DANNEHY, Js.

Argued January 11—decision released March 19, 1985

*John J. Kindl,* for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

SHEA, J. A jury found the defendant guilty of sexual assault in the first degree and also of two counts of robbery in the first degree. In his appeal from the

judgment the defendant has raised two issues: (1) whether the identification testimony of one of the victims should have been suppressed because of the claimed suggestiveness of the photographic identification procedure followed by the police; and (2) whether General Statutes (Rev. to 1981) § 51-61, which excused court reporters from recording the arguments of counsel in the absence of a request, interfered with the right of the defendant to the effective assistance of counsel on appeal and to a fair trial. We resolve both of these questions against the defendant and find no error.

Soon after midnight on June 21, 1980, two women student nurses, S and J, left the Yale-New Haven Hospital in New Haven and drove to the apartment of one of them, arriving at about 12:20 a.m. While they were sitting in the car parked in the apartment driveway, a man opened the passenger side door of the car and said, "Good evening." When both women exited from the driver's side door to go to J's apartment the man pulled out a small gray gun and directed them to get back into the car. S then handed him her wallet, but he repeated his command, and both women returned to the front seat of the car. The assailant got into the back of the car and demanded J's purse, which was handed to him. After examining the contents of the wallet and purse, the man ordered S to get into the back of the car where he directed her to perform fellatio upon him. When this had been accomplished, the assailant left the vehicle, telling the women to remain and to lie down on the seats.

A few minutes later the victims got out of the car and went into the apartment of a neighbor, who called the police. Within minutes a police officer arrived and, with the victims, drove around the area looking for suspects, to no avail. S and J were then taken to the police station where, after having examined a large number of photos contained in the police file, they separately

identified photographs of the defendant as those of their assailant. At the trial, both victims made in-court identifications of the defendant as the man who had accosted them on June 21, 1980, and evidence of their independent out-of-court photographic identifications was also admitted.

## I

The defendant on appeal confines his claim that the identification of the defendant should have been suppressed because of undue suggestiveness to the testimony of S, the victim of the sexual assault. As mentioned, S and J each made their photographic identifications of the defendant at the police station out of the presence of the other.

After arriving at the police station about 1:30 a.m., S was given a tray containing about fifty to seventy-five "mug-shot" photographs, approximately 80 percent of which showed black males, such as the defendant. She told the police that none of the photographs in the first tray showed the assailant but indicated that three of them displayed characteristics similar to those of the assailant. At that point, the investigating officer, in the presence of S, told someone outside the room to bring in another tray of photographs and to "put Richard Austin's picture in it." The name of the defendant, Richard Austin, was not then of any significance to S nor did the officer say anything as to the reason for including the requested photograph. When the second tray was brought into the room, S went through the photographs until, about halfway in her examination, she selected a 1974 picture of the defendant as that of her assailant. She said she was positive of her selection, and the particular photograph identified was signed by her and by two police officers.

A third tray was then prepared in accordance with the instruction of the investigating officer to put a more recent photograph of the same man in it. This tray was

assembled outside the room where S remained, but the officer's instruction was given in her presence. From this tray, S selected a 1980 photograph of the defendant, which she and two officers then also signed.

On October 15, 1980, S again was requested to come to the police station, because the original photographs she had identified could not be found. A board containing twelve photographs was shown to her and she selected again a photograph of the defendant. The two missing photographs that had been selected by S originally were subsequently found and these, as well as the board containing the photograph of the defendant picked out on October 15, 1980, were introduced in evidence at the trial.

"In determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on examination of the 'totality of the circumstances.' " *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980); see *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). In respect to the first inquiry, the state suggests no useful purpose served by the comments of the police that the defendant claims to have been suggestive or any other justification for them, such as exigent circumstances. See *Stovall* v. *Denno,* 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967). If they were indeed suggestive, therefore, it follows that they were unnecessarily so. To the extent that some degree of suggestiveness may have been inherent in the police remarks, the crucial inquiry relates to its impact upon the overall reliability of the identifications made by S upon each occasion.

The suggestive element claimed in the initial identification procedure was the officer's direction in the presence of S to put "Richard Austin's picture" in the second tray of photographs to be examined. The defendant contends that this remark was similar to informing a witness that a suspect is included in an array of photographs or in a line-up, a practice which has been condemned as unduly suggestive by several courts. *Sawyer* v. *State,* 260 Ind. 597, 298 N.E.2d 440 (1973); *State* v. *Wallace,* 285 So. 2d 796 (La. 1973); *State* v. *Classen,* 285 Or. 221, 590 P.2d 1198 (1979). "The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime." *Simmons* v. *United States,* 390 U.S. 377, 383, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968). "A witness may thus be lead [sic] to feel that he has an obligation to choose one of the participants in the display since the police evidently are satisfied that they have apprehended the criminal. The result may be that the witness strains to pick someone with familiar characteristics or someone who most resembles the actual criminal or the result may be that the witness will choose the one least dissimilar by the process of elimination." *Sawyer* v. *State,* supra, 602. A statement of the police that a suspect is included in the photographic array or in a line-up should be considered in determining whether it was unduly suggestive, but little harm is likely to arise where the witness, even without the police comment, would have inferred that the occasion for his being requested to identify someone is that the police have a particular person in mind who has been included among those to be viewed. *United States* v. *Gambrill,* 449 F.2d 1148, 1151 n.3 (D.C. Cir. 1971); see *Martinez* v. *Turner,* 461 F.2d 261, 264 (10th Cir. 1972).

Although the direction of the officer to include a photograph of Richard Austin in the second tray of mugshots seen by the victim S was an unnecessarily sug-

gestive element in the identification process, it did not rise to the level of suggestiveness considered in the cases relied upon by the defendant, where the police had indicated that one of the persons to be viewed was a "suspect" or was implicated by other evidence. Since the reference to the defendant followed her review of the first tray and her designation of three photos exhibiting characteristics of the assailant, S could reasonably have inferred only that a mug-shot showing some of the characteristics she had mentioned would be included in the second tray. She did inquire, upon hearing the officer's remark, who Richard Austin was and why his photo was to be included, but no response was given to this question. The name meant nothing to her, nor did the mug-shot she selected from the second tray contain this name or any other markings distinguishing it from the other photographs. The fact that all of the photographs in the tray were mug-shots would have created only the implication that all of the persons shown had previously engaged in criminal activity of some kind. It is unlikely that S would have assumed that the police had any evidence other than what she had furnished implicating Richard Austin, because she knew at the time of her examination that a fruitless search for a suspect in the vicinity of the crime had just been concluded. Although the officer's remark may have heightened interest in the second tray to some extent, in view of the numerous photographs contained therein, approximately fifty to seventy-five, with a large percentage showing persons similar to the defendant in age and race, the suggestive effect was so diffused and attenuated under the circumstances of this case as to be negligible. We conclude, therefore, that the initial identification procedure was not rendered unreliable by the allusion to the defendant's name, though we disapprove of the failure of the police to be more circumspect.

The suggestive element claimed by the defendant in S's selection of his photo from the third tray is that the direction of the officer to include a "recent photograph of the same man" was also given in her presence. Again we disapprove of the disclosure by the police of what the photographic array would contain, since the probative value of the identification was in some degree diminished by any such foreknowledge of the witness. We conclude, nevertheless, that in this case the high degree of assurance that the victim exhibited in making her first identification would have caused her to assume that the only purpose for her examination of the third tray was to see if she would pick out another photograph of "the same man." See *United States* v. *Gambrill,* supra, 1151 n.3. The remark of the police did nothing more than confirm this inference.

Our analysis is similar with respect to the claim of suggestiveness addressed to the October 15, 1980 selection by S of the defendant's picture from a board containing twelve photographs of black males of similar age and general appearance. S testified that when the photo board was placed in front of her she was told that "from this photo board you are going to pick out the man." She had previously been told that it was necessary for her to return to the police station to make a further identification because the two photographs she had selected originally had been lost. Under the circumstances the victim undoubtedly would have assumed, even in the absence of the remark, that the defendant's photograph was included in the array presented to her.

The conclusion we have reached that none of the three identifications made of the defendant by S was sufficiently tainted by the improper police comments as to impair its reliability is strengthened by our consideration of such related circumstances as her opportunity to view the assailant, her attentiveness, her description of him, her degree of certainty, and the

lapse of time between the crime and the identification. See *Manson* v. *Brathwaite,* supra, 114–16. Flood lights from the apartment building illuminated the scene of the crime. The encounter lasted twenty minutes and the assailant remained within a few feet of the victims. S's description generally matched the defendant except for the presence of a small amount of facial hair shown in his photograph at the time of his arrest, three days after the event. She was quite certain of her identification of him, which was made within two hours of the crime. The circumstance that the photographs of the defendant were selected by S and J independently from arrays containing numerous photos of persons of generally similar appearance strongly supports the accuracy of the identifications.

## II

The claim that the defendant's constitutional rights to a fair trial and to the effective assistance of counsel on appeal were violated is based upon the failure to record the closing arguments at the trial. The defendant does not maintain that any impropriety occurred during this portion of the proceeding, but that the unavailability of a transcript makes it impossible for appellate counsel to determine whether the state engaged in improper argument. Accordingly, his attack is upon General Statutes (Rev. to 1981) § 51-61, which, at the time of trial, required a court reporter to make accurate records of all court proceedings, "except the arguments of counsel . . . ." We have taken "judicial notice of the practice ordinarily followed in the trial courts of this state under which the court reporter remains in attendance during argument, prepared to record any objection or interruption which may occur in the course thereof, but does not record the remarks of counsel unless so directed by the court." *State* v. *Vitale,* 190 Conn. 219, 226, 460 A.2d 961 (1983). We have construed § 51-61 "as providing any party, upon request,

with the affirmative right to have closing arguments recorded." *State* v. *Frazier,* 194 Conn. 233, 240, 478 A.2d 1013 (1984). A recent amendment to § 51-61, adopted a few years after the trial of this case, now expressly provides that, "upon the request of any party, [the reporter] shall make accurate records of the arguments of counsel." Public Acts 1984, No. 84-23.

It appears that no objections were made to the closing arguments, because under our practice any such objections would have been recorded. *State* v. *Vitale,* supra, 226; see *State* v. *Killenger,* 193 Conn. 48, 58–59, 475 A.2d 276 (1984). "The absence of any objection whatsoever to the closing arguments in this case strongly suggests either that no impropriety occurred or that the defendant waived his right to object to any impropriety." *State* v. *Vitale,* supra, 226. "Absent any clearly denied request by the defendants for the arguments to be recorded or any exception taken to the method employed, the defendants must be deemed to have assented to the procedure employed." *State* v. *Killenger,* supra, 59. Although we recognize that the defendant has a right to a full record of trial proceedings so that proper appellate review may be had; *Hardy* v. *United States,* 375 U.S. 277, 279–80, 84 S. Ct. 424, 11 L. Ed. 2d 331 (1964); *State* v. *Frazier,* supra, 240; this, like other constitutional rights, may be waived. We have regarded the failure to request that arguments be recorded as a waiver and have frequently refused to consider claims of improper argument in the absence of a transcript or reconstruction thereof. *State* v. *Vitale,* supra, 226; *State* v. *Sawicki,* 173 Conn. 389, 396, 377 A.2d 1103 (1977); *State* v. *Paluga,* 171 Conn. 586, 598, 370 A.2d 1049 (1976); *State* v. *Vega,* 163 Conn. 304, 308, 306 A.2d 855 (1972). The absence of any objection or exception to improper argument, which we may infer from the absence of any such indication in the transcript, has also been regarded as a waiver of the

right to press such a claim of error. *State* v. *Vitale,* supra, 226; *Cascella* v. *Jay James Camera Shop, Inc.,* 147 Conn. 337, 343, 160 A.2d 899 (1960). We conclude that the failure to record the closing arguments, which resulted from the acquiescence of the defendant in the normal practice followed, did not violate his constitutional rights.

There is no error.

In this opinion the other judges concurred.