[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 7535
The defendant maintains that as a result of the loss of 3 1/2 hours of tapes of testimony and legal argument he is entitled to a new trial under Conn. Gen. Stat. 52-268. That statute provides in relevant part: "[a]ny party who. . . has appealed a final judgment of the superior court, . . ., may move the court in writing for a new trial if. . ., . . .the stenographer or court reporter who took the testimony at the original trial therein if his stenographic notes are not decipherable, has died or become incapable of taking the action necessary for the appeal. . . ." The defendant also relies upon both his state and federal constitutional rights in seeking the remedy of a new trial. (Conn. Const., Art. I 8 U.S. Const. Amendments V XIV, respectively.) Those constitutional rights come into play by virtue of Conn. Gen. Stat. 54-95 that gives the defendant a statutory right to appeal. Although a state is not required to provide appellate review of criminal convictions, once it creates such a right by statute, the appeal must be more than a "meaningful ritual". Evitts v. Lucey, 469 U.S. 387 (1985); see also Griffin v. Illinois, 351 U.S. 12, 20 (1956). The defendant argues that unless an appellate advocate with his "trained fingers may leaf and his trained eyes roam in search of an error," through a verbatim transcript, his right to appeal is so undermined that a new trial is required. (See Motion for New Trial dated March 17, 1992).
In Connecticut, the origins of Conn. Gen. Stat. 52-268
have been traced to principles of equity whereby a defendant is entitled to be provided with a fair opportunity to have his case heard on appeal. Dudley v. Hall, 105 Conn. 710 (1927) (death of stenographer). See also, State v. Gerich, 136 Conn. 705 (1950) (claimed indecipherability of reporter's notes); and Stebbins v. Rhodes, 162 Conn. 630 (1972) (death of stenographer resulting in unavailability of trial transcript). The importance in providing access to a complete transcript in order to enable meaningful pursuit of an appeal has been recognized by the United States Supreme Court, particularly when a defendant is represented by newly assigned appellate counsel. Hardy v. United States, 375 U.S. 277 (1964).
There have been a few courts that provide for a presumption of prejudice requiring a new trial when there is a substantial and significant omission in the transcript and where the defendant is represented by new appellate counsel. On the other hand, Connecticut, on the one occasion that the problem of lost notes arose in the context of a criminal trial, follows those courts that conclude "that the absence of a portion of the transcript does not warrant a new trial unless the proceedings CT Page 7536 cannot be sufficiently reconstructed to allow effective appellate review of the claims raised by the defendant." State v. Vitale, 190 Conn. 219, 223 (1983). [citations omitted].
A majority of jurisdictions will consider a motion for a new trial based on transcript deficiencies only if the appellant first establishes that available methods for reconstructing the record are inadequate: Annot., 107 A.L.R. 603 (1937); State v. Hart, 110 Ariz. 55, 514 P.2d 1243, 1245 (1973); People v. Apalatequi, 82 Cal.App.3d 970, 147 Cal.Rptr. 473, 475 (1978); State v. Vitale, 190 Conn. 219, 460 A.2d 961, 965 (1983); Yancey v. State 267 So.2d 836, 836-37 (Fla.Ct.App. 192); State v. Stafford, 223 Kan. 62, 573 P.2d 970, 972 (1977); Smith v. State,291 Md. 125, 433 A.2d 1143, 1149 (1981); State v. Borden,605 S.W.2d 88, 91-92 (Mo. 1980); State v. Neely, 21 N.C. App. 439,204 S.E.2d 531, 532 (1974); State v. Moore, 87 N.M. 412,534 P.2d 1124, 1126 (1975); Commonwealth v. Harris, 376 Mass. 74,379 N.E.2d 1073, 1075 (1978); People v. Glass, 43 N.Y.2d 283,401 N.Y.S.2d 189, 372 N.E.2d 24, 25 (N.Y. 1977).
Lack of a verbatim transcript does not amount to denial of the right to appeal when a suitable alternative is available, such as a statement of facts agreed to by both sides, a full narrative based, perhaps, on the trial judge's minutes taken during trial, or a bystander's bill of exceptions. Mayer v. Chicago, 404 U.S. 189, 194, 92 S.Ct. 410, 414-15, 30 L.Ed.2d 372
(1971); Draper v. Washington, 372 U.S. 487, 495, 83 S.Ct. 774,779, 9 L.Ed.2d 899 (1963).
In the case in question, approximately 3 1/2 hours of tape of proceedings from October 1, 1989 have been lost.[1] The testimony of three witnesses is involved. Officer Richard Bartlett testified for 34 minutes, from 12:22 p. m. — 12:56 p. m. (Reconstruction Hearing, hereinafter Rec. Hearing, Ex. A). Officer Peter Fisher testified for 89 minutes, from 2:16 p. m. — 3:35 p. m. and 3:55 p. m. — 4:05 p. m. Id. And, Sargeant Forlivio was on the stand for 27 minutes, from 4:10 p. m. to 4:37 p. m. Id. For approximately ten minutes of that time, Forlivio described how he took the video tape of the crime scene, and the tape took approximately 20 minutes to play. Id. Legal argument regarding the tape's admissibility that transpired on October 31, 1989 from 4:37 p. m. — 5:10 p. m. was repeated on November 1, 1989,[2] largely because the court deferred ruling until the next day and allowed argument to continue before ruling. Forlivio's testimony about the tape from October 31, 1989 was repeated for the jury on November 1, 1989, following its admission as a full exhibit, and the tape was again played, this time for the jury. The tape is obviously available for review. Therefore, nothing about Forlivio's testimony, the tape, or its admission remains a mystery. CT Page 7537
Officer Peter Fisher, who was on the stand for nearly 1 1/2 hours, testified how he responded to the scene as an identification officer. He took numerous photos of the parking garage. Exhibits H-O and Q-T were introduced into evidence without objection. (Rec. Exs. A, B and C; see also State's Reply to Defense Counsel's Affidavit dated January 6, 1992.) Only Exhibit P, a photo of the victim's body, was admitted over the defendant's objection on grounds of relevance and prejudice.[3] Officer Fisher also testified to taking samples of cotton fibers and debris, none of which proved to be of any consequence. (Id.) Finally, he testified about a diagram he prepared. (Ex. E). It was in regard to this exhibit that a "colloquy" took place. (Rec. Ex. C p. 8; See Affidavit, dated January 3, 1992, prepared by defense counsel at p. 5). The subject of that discussion related to the field notes upon which he based the diagram, and whether he retained them. Fisher was soon after excused to retrieve those field notes but because they had been destroyed, the court sustained the defendant's objection to its admission the next day. (Tr. November 1, 1989, p. 37). Therefore, Fisher's testimony regarding Exhibit E was totally inconsequential.
The last witness (actually the first) whose testimony was lost was Officer Bartlett. As the reconstruction record shows, his testimony of approximately 30 minutes concerned his preparation of the diagram that became State's Exhibit G. It is clear that defense counsel objected to its admission on grounds of relevance (Rec. Ex. B, p. 4; Rec. Ex. C, p. 4). He testified to arriving at the garage on the night of the homicide at 7:10 p. m., to monitoring crowd control, to taking down license plate numbers and about traffic conditions. Other than the defendant's objection to Exhibit G, again, nothing of any consequence can be recalled by either the witness or any of the participants in this reconstruction process. Defense counsel can merely point to a few questions which were leading but which, according to the Rec. Hearing Exhibits, were not objected to. (See Affidavit, dated January 3, 1992, prepared by defense counsel.) He argues that he would have objected to them; therefore he must have objected to them; therefore he did object to them; and therefore, there must be some other questions to which his objections are missing. The few leading questions to which defense counsel surmises he must have objected are preliminary and result in totally inconsequential testimony. (Id. at p. 3).
There is no question that whenever even a portion of a transcript is lost, there is almost no chance of ever being able to reconstruct the record verbatim. What is intended by the cases requiring reconstruction is that alternative methods be CT Page 7538 employed to enable the defendant to have his claims fairly presented.
 "[W]hen a transcript of the evidence is not available, `rough accommodations' in the method in which an appeal is presented are constitutionally permissible. Norwell v. Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456
(1963). See Pisani v. Warden, D.C., 289 F. Sup. 232 (1968). And alternative methods of reporting the trial proceedings, such as a statement of agreed facts, a bill of exceptions, or a narrative statement based on the judge's notes, are constitutionally adequate if they bring before the appellate court an account of the events sufficient to allow it to evaluate the defendant's contentions. Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400
(1971). Mayer v. Chicago, 404 U.S. 189, 194-195, 92 S.Ct. 410, 30 L.Ed.2d 372
(1971). Draper v. Washington, 372 U.S. 487, 495-496, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963). Griffin v. Illinois, 351 U.S. 12, 20, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Thus, if the proceedings at trial can be sufficiently reconstructed and presented to the appellate court, a new trial is not constitutionally required when the transcript is not available through no fault of the parties. See Britt v. North Carolina, supra. See also State v. Hart, 110 Ariz. 55, 514 P.2d 1243 (1973); Yancey v. State, 267 So.2d 836 (Fla. Dist. Ct. App. 1972); State v. Jefferson, 204 Kan. 50, 460 P.2d 610 (1969); State v. Moore, 87 N.M. 412, 534 P.2d 1124 (1975); People v. Glass, 43 N.Y.2d 283, 401 N.Y.S.2d 189, 372 N.E.2d 24 (1977); People v. Rivera, 39 N.Y.2d 519, 384 N.Y.S.2d 726, 349 N.E.2d 825 (1976); State v. Neely, 21 N.C. App. 439, 204 S.E.2d 531 (1974)."
Commonwealth v. Harris, 376 Mass. 74, 379 N.E.2d 1073, 1075
(1978). "The Harris guidelines are not designed to result in a record complete enough to dissect in the hope of discovering hitherto unnoticed issues of errors." Commonwealth v. Hunt, CT Page 7539493 N.E.2d 884, 885 (Mass.App.Ct. 1986). Rather, they, like those set forth in State v. Vitale, supra, are designed to determine if the record is sufficient enough to review any identifiable claims.
There is nothing in the reconstructed record to indicate trial errors that would require reversal. Following the lengthy and comprehensive attempts at reconstruction, this court is satisfied that the record has been sufficiently reconstructed so as to provide the defendant with a near perfect record with which to pursue his appeal. As the record of the reconstruction proceedings show, the court was not satisfied to rely exclusively on the notes of counsel, its own notes or even the list of questions and answers prepared by the monitor. Each witness from the day in question was called to testify regarding his independent recollection of his testimony from October 31, 1989; (Tr. December 18, 1991) each was asked, over defendant's objection, to read several statements from the attorneys and the court with which to compare his memory and to read the court monitor's list of questions and answers (written down by her as her tape machine played) for further comparison. Not one witness could recall any area of inquiry not described in at least one of the aforementioned documents. Each witness ratified what he had been shown in combination as a complete statement of his trial testimony. Only when asked if they could state absolutely that every detail had been included in the combination of documents were the witnesses forced to say no; however, none could even speculate as to what might have been omitted.
The defendant, through his attorney — the same attorney who represented him at trial as well as on appeal —
 "has failed to show that any error was committed in the lost portion of the record, he has failed to show that the record in its present form is insufficient to review any claims of error, and he has failed to show that he has been prejudiced by the partial loss of the record."
United States v. Kenney, 911 F.2d 315, 318 (9th Cir. 1990).
A key claim on appeal is that the trial court erred in allowing the jury to view the video tape of the scene. The tape is available and "speaks for itself." The conditions under which it was shown — the lack of sound for example — were set forth on the record and no dispute as to those conditions exist. The arguments regarding the admissibility of the tape were CT Page 7540 repeated and the state has agreed that waiver is not an issue. The claim on appeal is that the tape, in addition to being overwhelmingly prejudicial, did not accurately reflect the scene immediately after the incident.[4] Photographs taken before the videotape, for which no objection except as to Exhibit P was raised, speak to that issue.
Defense counsel advocates a mechanistic approach to the problem of inadequacies in the trial transcript. That is not the case, especially where the same attorney, at trial and on appeal, is available. See United States v. Gregory, 472 F.2d 484
(5th Cir. 1973) (dicta); United States v. Upshaw, supra at 1222-1224; United States v. Garcia-Bonifascio, 443 F.2d 914 (5th Cir. 1971); United States v. Rosa, 434 F.2d 964 (5th Cir. 1970); United States v. Atilus, 425 F.2d 816 (5th Cir. 1970); Stephens v. United States, 289 F.2d 308 (5th Cir. 1961). (All drawing the distinction between cases involving new counsel on appeal and those cases wherein the same attorney is involved in both stages of the proceedings.)
 But "[w]hen a defendant is represented on appeal by the same attorney who defended him at trial, the court may properly require counsel to articulate the prejudice that may have resulted from the failure to record a portion of the proceedings. Indeed, counsel's obligation to the court alone would seem to compel him to initiate such disclosure. The attorney, having been present at trial, should be expected to be aware of any errors or improprieties which may have occurred during the portion of the proceedings not recorded.
United States v. Selva, 559 F.2d 1303, 1306 (5th Cr. 1977).
This court has designated a variety of exhibits and testimony to collectively make up the reconstructed record. Few discrepancies are found upon review and comparison of these items. Nevertheless, the defendant is free to point to these if any one version varies, even slightly or favors his position in any way. This court has determined that the record has been sufficiently reconstructed to allow meaningful and effective appellate review. Therefore, the motion for new trial is denied.
KATZ, J