GEORGE KATSONAS vs. W. M. SUTHERLAND BUILDING
AND CONTRACTING COMPANY.

Third Judicial District, New Haven, January Term, 1926.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and HAINES, JS.

One who by agreement obtains a license to perform certain acts upon the premises of another, is liable as a trespasser to the extent that he exceeds or abuses his license, but he does not thereby

become a trespasser *ab initio,* since that doctrine is confined to cases where the original entry was by virtue of some authority conferred by law.

A license to perform a particular act carries with it by implication the privilege to do all other things essential to its accomplishment.

A license may be created by express agreement or by implication from the conduct of the parties.

Whether or not a license exists, is, if the facts are in dispute, a mixed question of law and fact to be determined by the jury under proper instructions by the court; whether or not it has been exceeded or abused is a question of fact.

In the present case, the trial court instructed the jury that if the defendant, in the execution of its alleged license to remove and rebuild the wall of the plaintiff's candy store, "duly performed the work as contemplated by the parties with reasonable care and without unreasonable delay," it would not be liable for the damage to the plaintiff's stock and business. *Held* that the trial court did not err.

A defendant cannot be heard to complain of instructions which tend to relieve him from, or lessen, his responsibility.

It is not error for the trial court to revoke an order, already passed, to cite in an additional codefendant, where it appears that, though a proper party, his presence is not necessary to a complete determination of the cause and would serve only to complicate the issues.

A memorandum, when used by a witness to refresh a present recollection, is not itself admissible in evidence; but when the witness has no present recollection of its contents, but does know, from past recollection, that the facts therein stated are correct, the memorandum is admissible as an exhibit, provided it was made substantially at the time of the events recorded.

To prove loss of business profits caused by the defendant's acts, the plaintiff offered in evidence and the trial court admitted an account book, in which, according to his testimony and that of his clerks, he had entered each item of his receipts and disbursements. *Held* that the trial court did not err.

The plaintiff's landlord testified, as a witness for the defendant, that the plaintiff had acquiesced in the defendant's delay in the prosecution of the work. *Held* that, upon cross-examination of this witness, two letters written to him by the plaintiff, in which the latter complained of the delay, were admissible as bearing upon the weight of his testimony.

The defendant moved for a new trial on the ground that the jury had been guilty of misconduct, since it appeared that certain candy, introduced by the plaintiff as an exhibit and taken to the jury room, was missing after the jury had completed their

deliberations. The trial court denied the motion. *Held* that the trial court's ruling was proper.

The charge to the jury relating to the damages recoverable by the plaintiff reviewed and *held* to constitute a correct and adequate statement of the facts and legal principles involved.

Argued January 26th—decided February 23d, 1926.

ACTION to recover damages for injuries to the plaintiff's property and business, alleged to have been caused by the acts of trespass committed upon his premises by the defendant, brought to the Superior Court in New Haven County and tried to the jury before *Marvin, J.;* verdict and judgment for the plaintiff for $3,000, and appeal by the defendant. *No error.*

*Cornelius J. Danaher* and *Denis T. O'Brien, Jr.,* for the appellant (defendant).

*Charles S. Hamilton,* with whom was *Morris M. Wilder,* for the appellee (plaintiff).

KEELER, J. This was an action for a trespass committed by defendant, a contracting corporation, by tearing down without right the wall of a store occupied by the plaintiff as lessee.

The cause was tried to the jury, and plaintiff claimed to have proved a lease of the store from one Esidor Derecktor, the owner of the building; that the defendant, without right or permission, tore down the partition wall on the west side thereof, running practically the whole length of the store, and left the whole side of the store on the western side exposed to the weather, dust, dirt and such conditions as would result from the total removal of the larger part of the wall on that side, where the rest of the building was being torn down and rebuilt to make it over into a theatre; that at the same time, tools and appliances were brought into his store, and furniture shoved to

one side, and show cases moved away a foot from the wall, and candy broken up and exposed to the weather and made unfit for sale, and that this condition continued until a tile wall had replaced the wooden partition torn down by the defendant, and that this tile partition had two or three holes left in it some four or five feet in height and about thirty inches in breadth, and was left open and unplastered from some time in July up to the latter part of December, when it was plastered only upon demand of the plaintiff, and during all that time his goods and wares were exposed to the dust and dampness, rain and dirt, and an unsightly condition resulted that would drive customers away and prevented the use of his place of business; that also large quantities of water were let into the cellar by which a large amount of fruit was soaked, paper bags spoiled, and the cellar rendered useless and unfit to store and keep fruit in, and also caused dampness in the store that was destructive to the goods sold therein; that by reason of these acts of the defendant, plaintiff's place of business was rendered unsightly and unfit for carrying on a candy store and ice-cream parlor, or for selling fruit; that customers were driven away and his business fell off so that it was practically ruined; and that candy, fruit syrups and ice-cream were spoiled and rendered unfit for sale, and that the premises were rendered unfit for carrying on the business for which the plaintiff had rented the same.

The defendant claimed to have proved the following facts: That the store located at 97 West Main Street, approximately twelve feet by fifty feet with cellar underneath same, had for its west boundary a sheathed wooden partition, and the sheathing was fastened to the east side of eight inch wooden columns; on the west side of these columns, there was also a

partition consisting of wooden sheathing attached to said columns, which sheathing, so attached to the columns, constituted the east boundary of one store and the west boundary of the store at 97 West Main Street, and the space between this partition was not included in the lease to the plaintiff, but was in the lawful possession of Esidor Derecktor, the owner of the building; that the Community Playhouse Company of Meriden entered into a contract with the defendant for the erection of a theatre building on the premises covered by a lease between Derecktor and the Community Playhouse Company, and also for remodeling into an entrance lobby the premises located at 99 West Main Street; that at the time of the execution of this lease, the stores at 97 West Main Street and 99 West Main Street, were separated by a single sheathed wooden partition, with sheathing fastened to the west side of the eight inch wooden columns, which columns were exposed on the premises located at 97 West Main Street, which premises are situated immediately easterly of the premises at 99 West Main Street; that some time prior to July 15th, 1921, the plaintiff, without the knowledge, consent or permission of Derecktor, tore down and removed the partition on the east side of the wooden columns and wrongfully entered upon and occupied the space between the sheathing on the east side of the columns and the sheathing on the west side thereof; that on or about July 15th, 1921, the defendant, acting as the agent and contractor for the Community Playhouse Company, removed the sheathed wooden partition on the east side of the store at 99 West Main Street, leased by the Community Playhouse Company, and in so doing, the defendant did not then, nor at any time thereafter, interfere with the peaceful occupation and enjoyment of the premises occupied at 97 West Main

Street by the plaintiff; and thereafter, the defendant, as the agent and contractor of the Community Playhouse Company, erected in place of this wooden partition, a concrete partition wall, wholly upon the premises leased to and in the possession of the Community Playhouse Company; that the concrete partition was not unattractive in appearance or repulsive to customers and would not have been visible or open or in any way offensive to customers of the plaintiff, who entered said store, if the plaintiff had not previously removed and torn down the sheathed wooden partition, which formed the westerly boundary of the store at 97 West Main Street; that the plaintiff expressly consented and acquiesced and actively assisted the defendant in the removal of the wooden partitions on the easterly side of the store at 99 West Main Street; the defendant entered upon the premises leased to the plaintiff at the express request of the plaintiff for the purpose of plastering the easterly side of the concrete wall erected between the two stores and the plastering was done by the defendant without cost to the plaintiff or to Derecktor and in a careful, expeditious and workmanlike manner.

During the trial of the cause the plaintiff was testifying to his loss of business profits arising out of the disturbances and interruptions connected with the erection of the concrete wall, and testified that he had kept a book in which every day during the time he was in business he entered all items of his receipts and expenses, and his testimony was confirmed by that of his clerks, and then the book was offered in evidence in connection with his testimony and was admitted, over the objection and exception of the defendant.

The defendant alleged and offered evidence to prove that the plaintiff had given his consent and had ac-

quiesced in the acts of the defendant complained of, and that he had done so partly in the hope that as a result of the removal of the partition and the erection of a new one separating his store from the lobby of the theatre to be constructed, he would secure a door from his store into the lobby and the increase in business resulting therefrom. To prove this, as well as the fact that a portion of the partition had been previously taken away by plaintiff without the knowledge and consent of Derecktor, the owner of the property, and that plaintiff had promised the owner to restore the same, the testimony of Derecktor and others was offered by defendant. To rebut this testimony and as part of the cross-examination of Derecktor, the plaintiff offered two letters, exhibits in the case, to the admission of which defendant objected on the ground that they were addressed to Derecktor, not a party to the suit, and were mere hearsay, irrelevant, immaterial and incompetent; but the court overruled the objection and admitted the letters.

The first of these letters from plaintiff to Derecktor, dated October 22d, 1921, gave the latter notice that plaintiff's store had become untenantable in view of the recent alterations; that there were large openings in the new brick wall remaining unplastered, and openings in the window ledging so that the premises were so cold that plaintiff was unable to do business. Plaintiff stated that if necessary repairs were not made immediately, he would be compelled to close business until cold weather was over, and that he should hold Derecktor responsible for all resulting damages. The second letter was dated November 1st, 1921, and was from plaintiff's attorney stating to Derecktor that because of his failure to make repairs, plaintiff was unable to continue business and compelled to close.

During the trial of the cause, several boxes of candy

of different kinds, and put up in different ways, and also candy in bulk, were brought in and admitted as exhibits, to illustrate the kind of goods that the plaintiff carried in his store and was selling, and its susceptibility to being injured by the acts of the defendant. No objection was made to their being used in evidence.

At the close of the charge to the jury, these exhibits were taken with the other exhibits to the jury room, and after the rendition of the verdict, the deputy sheriff who had charge of the jury did not find all the candy in the room; but no evidence was offered as to who had removed it, or what had been done with regard to it. The messenger of the court testified that upon going to the room after the jury had rendered their verdict and retired, he found some of the candy gone, but what became of it he did not know. Upon this condition of affairs and evidence, the defendant filed its motion for a new trial. The court, after due hearing, overruled the same.

The defendant requested the court to submit certain proposed interrogatories to the jury, which the court refused to do.

On November 11th, 1924, the court (*Brown, J.*) ordered that Derecktor be made a codefendant in the action, and on November 26th he filed an answer in the action, containing two defenses, which are identical with those of the construction company, and a third defense alleging a former suit by plaintiff against Derecktor for the same cause of action, resulting in a judgment in favor of the latter. The plaintiff moved to expunge this answer and also demurred thereto. The motion to expunge was granted. The court, also upon its own motion, revoked the order citing in Derecktor as a codefendant, and dismissed him as a party defendant.

The defendant in its reasons of appeal alleges as error the action of the court in admitting in evidence the plaintiff's account book, and the letters to Derecktor above referred to, and also the action of the court in refusing a new trial on account of misconduct of the jury as regards the candy, the refusal to submit interrogatories to the jury, and the dismissal of Derecktor as a party defendant. It also alleges error in the refusal to give certain requested instructions to the jury, and in portions of the charge as given, which will be considered in their order.

The defendant in this case was the contracting company, which was acting, however, as the employee of the Playhouse Company, and in the discussion following we shall treat them as identical.

The court charged the jury that any consent or license given by the plaintiff to defendant to remove the wall and build another in its place, would simply give defendant permission to enter and construct, with care and without unnecessary injury, a new wall, and that if this license was exceeded in any way by putting up an unsuitable wall, or the wall was left open so that it allowed the weather to come in for an unreasonable time resulting in injury to the plaintiff, then the unlicensed acts were trespasses, and not within the permission given. To this the defendant objects because such considerations were outside of the issues in the case, because the question of excess of the license was not raised by the pleadings. The complaint alleged the various acts of the defendant in the premises as constituting an entire and continuous trespass. Defendant denied this allegation. Clearly under such a denial, all facts showing the extent of the trespass were admissible. Now in effect plaintiff claimed that if any unlicensed acts occurred in the way of trespass, defendant was liable for the whole injury

as a trespasser *ab initio*. This is incorrect as matter of law, and the charge of the court was a correct exposition of the law under the pleadings. While the charge gave to the defendant the right to reduce damages by showing that some of its acts were licensed, notwithstanding other acts exceeded the license, it also gave plaintiff the right to recover for the excess, and did not operate in any way to his disadvantage under the law. Where the license to do a certain act is a matter of agreement between the parties, as distinguished from a right existing by law to do certain acts, the doctrine of trespass *ab initio* does not apply. *Six Carpenters' Case,* 8 Coke, 146; *Allen* v. *Crofoot,* 5 Wend. (N. Y.) 506; *Esty* v. *Wilmot,* 81 Mass. (15 Gray) 168; *Beers* v. *McGinnis,* 191 Mass. 279, 77 N. E. 768; Bigelow on Torts (8th Ed.) 384, 386; Burdick on Torts (3d Ed.) p. 397. "But where a person gives a license or authority himself, to do a thing, he can not, for any subsequent cause, punish the act which has been done by his own license." 1 Rev. Swift's Digest, side page 516. It is to be borne in mind that there are two defenses interposed by defendant, one denying any trespass, and another justifying any claimed acts of trespass by reason of a license to perform these acts. The portion of the charge just considered was given with reference to the justification by license.

The court charged the jury that a license to do a particular act involved the right to do other acts essential to carrying out the license, and that it was the right of defendant to go on plaintiff's property to gain access to that side of the wall, and to carry tools and materials to points where needed. To this the defendant objects that this instruction assumes a license given by Derecktor, when in fact the plaintiff's claim was, and the evidence disclosed, that the license was

given to the defendant through the medium of Dereck-
tor and his sons. We find nothing in the pleadings
or claims of proof to sustain this claim, nor do we see
that it is germane to any consideration of the instruc-
tion given, which latter was a correct statement of
the law.

The court charged that a license to the Community
Playhouse Company would be a license to its em-
ployee, and that this was true in this case in view of
the fact that the jury might conclude that plaintiff
knew that the Contracting Company was engaged in
building a new theatre, when he was approached on
the subject of the new wall between his store and the
theatre lobby. Consequently, no consent or license
given by him to the Derecktors constituted any excuse
for what was done. Therefore testimony as to plain-
tiff's conversations with the Derecktors should have
no consideration except to prove that plaintiff knew
what was going on or contemplated. Conversations
with the employees of the Contracting Company were,
however, proper subjects for consideration as showing
consent of plaintiff that defendant might enter his
store. Defendant's objection to this is that thereby the
jury was led to assume that no license or consent would
be available to the defendant unless communicated
directly by plaintiff to defendant, while it might have
been communicated through Derecktor and his sons
as indicated by the testimony. So far as the testi-
mony is concerned, it is not before us, but the logical
effect of the charge is certainly not as claimed by the
defendant, or is it in any way objectionable.

The court charged that a license "may be inferred
from the acts of the parties and the exigencies of the
case," and that when a landowner tacitly permits cer-
tain acts upon his property, a license to do these acts
may be inferred from his failure to object, and whether

such a license ordinarily exists is a question for the jury to determine, and "one, who exceeds the license and abuses the authority is liable for the consequential damages arising therefrom." Defendant complains that the court in this instruction left entirely to the jury the question of the extent of the license, which was a question of law to be determined by user, or the agreement or acts of the parties, and that the sole question for the jury was whether the acts or agreements of the parties constituted a license. This objection does not carry weight. The existence of a license was a mixed question of law and fact to be determined by the jury under specific instructions by the court; whether the acts of defendant went beyond the permission of the license was a question of fact. The jury could not have been misled by the instruction given. Other parts of the charge show that the jury was adequately instructed in this regard.

The court charged that if defendant had a license from plaintiff, express or implied, it was obvious that the license was not merely to tear down a wall, but also to put another in its place; yet it did not follow that defendant had a license to substitute the kind of partition it placed there in July; and that if defendant "duly performed the work as contemplated by the parties with reasonable care and without unreasonable delay," the verdict should be for defendant; but if by slovenly execution of the work and unnecessary delay in performance of it, there was resulting injury to plaintiff, a verdict should be rendered fairly compensating him. Defendant claims this instruction to be erroneous as not bringing "to the attention of the jury the situation presented under the pleadings in the case." This objection is not well taken. The charge seems peculiarly adapted to the issues existing in the case.

The defendant's sixth assignment of error is ad-
dressed to the charge with reference to the question of
trespass in the cellar.    The trial judge commented
upon the evidence as to the partitions in the cellar,
and the change from a slatted partition to a brick
wall, with a tight door, and added: "I do not under-
stand that it is claimed that this brick wall or door
was on Katsonas' property."    This is claimed as error
by defendant, on the ground that the important issue
of trespass in the cellar was withdrawn from the jury.
If so, no error intervened in any way harmful to de-
fendant, since it was thereby relieved from responsi-
bility in that regard.

The court charged that if the plaintiff or his em-
ployees endeavored to protect his property as far as
possible, when defendant started its work, and moved
the same out of the way, this could not be construed
as a justification of acts already done; and if, after
the acts were done, he demanded that the premises
be restored to their former condition, this would prove
nothing in the way of mitigation or license, as regards
unlawful acts.    This instruction is challenged by de-
fendant because it subverted the purpose of the evi-
dence to which it relates, which was offered to show
"acquiescence by plaintiff and the nature of the use of
the license by the defendant."    The charge is correct
in law, and so far as appears by the finding of the
court adapted to the claimed proofs of the parties, and
within the issues of the cause.

The record of conviction of plaintiff of an offense
for which he was imprisoned six months in jail, was
offered to discredit him as a witness.    The court
charged that the evidence related solely to the credi-
bility of plaintiff, and added:    "Under no circum-
stances are you to discredit the testimony of other
witnesses, nor are you under any circumstances to

minimize the damages, because the plaintiff may have been guilty of a crime." The defendant, conceding the general correctness of the charge on this point, claims that the part thereof above quoted destroyed the entire effect of the instruction. In quoting this clause in their brief, counsel omit the word "other" before witnesses; if it be restored, the claim of defendant falls to the ground.

Defendant requested the court to charge that if plaintiff consented to the removal of the wooden partition between the stores; also if the jury found that the removed wooden partition was situated entirely upon premises leased to the Playhouse Company, the verdict should be for defendant; and alleges error in the court's refusal to so charge. There is no error in such refusal; the first request is unqualified as to any damages arising to the plaintiff from improper conduct of the licensed work, and the second is in effect telling the jury that if the land on which the wall was erected did not belong to plaintiff, defendant might do what it chose in the new erection without regard to damage incidentally and wrongfully inflicted on plaintiff during the execution of the work.

Defendant requested the two following instructions:

"3. If you find that the defendant obtained permission from the plaintiff to enter upon the premises of the plaintiff, and if you further find that the defendant used reasonable care in the removal of said partition and in the erection of the new partition, then your verdict should be for the defendant.

"4. In determining the amount of the plaintiff's damages, in the event you should find for the plaintiff, you should consider the fair market value of the fixtures owned by Katsonas in 1921, rather than the prices paid by Katsonas for the fixtures."

The request numbered three could not be properly

given without qualification in respect to disturbance and interruption of plaintiff's business owing to delay and unsightly surroundings. To the extent to which it is entitled to consideration it is fully covered in the charge as given. The request numbered four is given in the charge in practically identical language.

Reasons of appeal seventeen to twenty-one inclusive are concerned with errors already assigned in previous reasons and before considered in this opinion.

Error is assigned with respect to the revocation of the order making Derecktor a codefendant. In view of the disclosures of the record regarding his answer and the motion and demurrer addressed to the same, we cannot say that the court erred. In passing, we observe that the motion to expunge was not a proper pleading. Its function is limited by General Statutes, § 5639. It never should be used to take the place of a demurrer. From such a view it clearly appears that while Derecktor was a proper party, he was not a necessary one, and the trial judge's reasons, expressed in the memorandum of decision, for dropping him as a party defendant, are proper and forcible. He says: "That though the court had the power to order the plaintiff to cite in Esidor Derecktor as a codefendant as was done, in this case where the plaintiff apparently insists according to his right, upon his election to proceed so far as his claims are concerned against the defendant Sutherland Company alone, the bringing in of this additional party defendant complicates rather than simplifies the ultimate determination of the rights of the parties affected." From anything appearing in the complaint no cause of action is properly averred against him.

Error is alleged in the action of the court in admitting plaintiff's account book. Plaintiff was not suing defendant on any contract or for any debt,

hence his account book was not primarily admissible. Plaintiff was, however, testifying as a witness with regard to his loss of business, and had offered evidence as to the regularity of the keeping of the book; he had a right to use it as a memorandum to refresh his memory as to the amount of his business receipts and expenses. If he had a present recollection which was refreshed and called into being by the inspection of the book, then the latter was not admissible as an exhibit. In *Curtis* v. *Bradley*, 65 Conn. 99, 114, 31 Atl. 591, we held: "A memorandum of details which are essential to the full proof of a transaction at issue, proved to have been made substantially at the time of the transaction, and under such circumstances that the memorandum can make a correct statement of such details as they were then known to the person who made the memorandum or saw it made, and who is himself a witness and testifies to the transaction but has lost all recollection of such details, is in connection with the testimony of such witness admissible as evidence; because such memorandum is in itself evidence of a fact closely relevant, plainly material, and essential to a just trial, and because no principle of the law of evidence, or rule of public policy, justifies its exclusion; and such memorandum may properly be marked as an exhibit." This case accords with the well-known rule of evidence that, where a witness has present recollection, when it is refreshed, the refreshing document is not admitted. If, however, from inspection of the memorandum, the witness does not have a memory of the past transaction, but does know that the facts therein stated are correct, then the book may be introduced as an exhibit. This doctrine was applied and fully explained in *Neff* v. *Neff*, 96 Conn. 273, 278, 279, 114 Atl. 126. See Wigmore on Evidence, Vol. 2 (2d Ed.) § 758. It is not expressly

found by the court that the account book did not refresh the present recollection of the witness, but since the account book related to matters beginning in 1920 and going through the summer and early fall of 1921, and the action was tried in February, 1925, we are hardly called upon to make any other inference than that the witness had only past recollection. However, the objection was general, and if the evidence was admissible for any purpose or under any circumstances, the court did not err in this regard.

The defendant alleges error in the admission of the letters hereinbefore referred to, from the plaintiff and his attorney to Derecktor. The finding states that Derecktor testified as a witness for defendant, and the purpose for which he was called, but does not follow the rule in giving a sufficient extract from the testimony to show the bearing of the letters upon his testimony on cross-examination, and we might decline to consider the point attempted to be raised on that ground. If, however, we are to infer that he testified that plaintiff had acquiesced in the delay in closing up the new partition wall, and partly in hope of obtaining an entrance door to the lobby, it was proper cross-examination to bring to his attention the letters in question written to him and presumably received, as they would tend to show that he knew facts contrary to his testimony, and thus diminish its weight.

Error is also assigned in the decision of the court on the motion for a new trial on account of the alleged misconduct of the jury regarding the candy. The significant and determining fact in this matter is that it does not appear that the jury or any member thereof ate any of the candy. Without a finding of fact that the jurors or some of them did in fact consume some portion of the assortment, there is nothing on which to base a conclusion of misconduct. Had

it in fact been found that one or more of the jurors partook of the confectionery, it would still have been within the sound discretion of the trial judge to deny the motion.

Finally, in its last two supplemental reasons of appeal, the defendant assigns error in the neglect of the trial judge in failing to give the jury a correct, adequate and sufficient rule of damages to enable it to fix damages upon the facts set forth. The complaint (chiefly in paragraph three) alleges damages to plaintiff's fixtures by breaking and loss from theft of a part of them, loss of trade and profits, and loss of stock by destruction and deterioration. The claimed proofs relating to damages, as set forth in the early part of this opinion, are concerned with acts causing damages, and the disastrous results. There is no proof claimed of definite items nor of valuation. In a memorandum of decision upon the defendant's motion to set aside the verdict, not pursued on appeal, the trial judge states that evidence as to damages "came almost wholly from plaintiff's side." This memorandum is made part of the finding. The material parts of the charge bearing directly upon the amount of damages are as follows:

"Plaintiff can recover damages which are the logical and natural and proximate result of facts complained of. The injury to credit and business standing as well as injury to his business which are the natural and proximate and necessary consequence, are proper subjects of inquiry. Of course in considering the subject of damages you are limited to the damages that are claimed by the complaint and the injury which is specially alleged in the complaint.

"I simply desire to insist upon the fact that there must be sufficient evidence to enable the jury with a reasonable degree of certainty and exactness to as-

certain the loss. And significant in this connection
is one claim which I have read to you once, and which
constitutes paragraph 3 in his complaint, which you
will have with you in the jury room.

"As to the damage that he claims with reference to
his fixtures you should bear in mind that the fair
market value of the fixtures owned by Katsonas in
1921, rather than the prices that he paid for them,
is and should be your guide. As to the fruits, candies,
syrups, soda, etc., the evidence is practically undis-
puted as to what would have been the cost of its
reproduction. The book of daily sales is disputed,
the defendant claiming that it is not genuine; but
the invoices do show the cost of reproducing the
stock, and that of course is a fair basis for estimat-
ing its value. And these invoices also show some-
thing of the volume of business being done by the
plaintiff from July to December in each year, includ-
ing the year under consideration. On this subject,
too, I think, I should call your attention to this, that
it was the duty of the plaintiff to minimize any loss
which threatened him. If he is entitled to recover
at all he is entitled to recover for such losses, and
those losses only, which flowed proximately, naturally
and necessarily from misconduct on the part of the
defendant, and that alone. He could not because of
some misconduct on the part of the defendant, in some
particular, lie down and let his business go to pieces
and charge the result to the defendant."

It will appear from the above that reference is made
by the trial judge to every item of damage of any
importance claimed by the plaintiff in his complaint
or arising out of the claimed proofs contained in the
finding. Attention was called to loss of credit, loss
of business, value of fixtures injured and stolen. Value
of the stock in trade destroyed or injured was referred

to the invoices which the jury had in hand, and the statement made that the figures derived therefrom were practically undisputed. Volume of trade as bearing upon loss of sales was also referred to the book and invoices. Unless it be held that the court was bound to go over figures and items in the categories of damage above referred to, and that, too, without special requests in that regard, we fail to see wherein there was any failure properly to charge on this subject.

The refusal of the court to submit interrogatories to the jury was within its sound discretion, both as to any submission whatever, and as to the propriety of those submitted, and is not a subject of review by us.

There is no error.

In this opinion the other judges concurred.