## State of Connecticut *v.* Steven Boucino
## (12068)

Peters, C. J., Shea, Dannehy, Santaniello and Callahan, Js.

Argued December 4, 1985—decision released March 18, 1986

*Richard T. Meehan, Jr.,* with whom, on the brief, was *James J. Ruane,* for the appellant (defendant).

*Elpedio Vitale,* deputy assistant state's attorney, with whom were *Julia D. Dewey,* assistant state's attorney, and, on the brief, *Arnold Markle,* state's attorney, and *John Durham,* assistant state's attorney, for the appellee (state).

SANTANIELLO, J. After a trial by jury, the defendant, Steven Boucino, was convicted of robbery in the first degree, in violation of General Statutes § 53a-134 (a) (4), and larceny in the first degree, in violation of General Statutes § 53a-122 (a) (2). He received a total effective sentence of not less than fifteen nor more than forty years. On appeal, he raises a number of claims: (1) that the trial court erred in excluding alibi testimony for failure to comply with Practice Book § 763; (2) that the trial court erred in failing to suppress in-court and out-of-court identifications of the defendant made by two witnesses to the robbery; (3) that his conviction of both larceny and robbery violated his constitutional right to be free from double jeopardy; (4) that his constitutional right of due process was violated by the failure of the trial court to have final arguments recorded; and (5) that the trial court erred in making various evidentiary rulings. We find no error.

The jury could reasonably have found that the defendant and an accomplice entered the City Trust Bank in Cheshire on May 22, 1980, at 11:30 a.m., and robbed it of approximately $9000. The defendant was armed with a shotgun and his companion with a pistol. Both men had nylon stockings covering their faces. The defendant stood near the entrance and issued com-

mands to the people in the bank while his companion jumped over the counter and obtained the money. The entire robbery lasted approximately ten to twelve minutes. A number of bank employees were later able to describe the two men and one, Nina Mansourian, was able to select the defendant's photo from two arrays. A customer of the bank, Beatrice Ararat, who saw the defendant leaving the bank in his car, also identified him from two arrays. Other facts will be discussed as they become relevant to the specific claims raised.

## I

The defendant's first claim is that the trial court erred in excluding proffered alibi testimony. He argues that Practice Book §§ 762 through 767, our so-called "notice of alibi" discovery rules, are unconstitutional in two respects. First, he claims that the Practice Book provisions are facially invalid because they infringe his fifth amendment privilege against self-incrimination and his right to due process. Second, he claims that the application of the Practice Book rules by the trial court violated his sixth amendment rights to compulsory process and to present a defense.[1] We disagree and find that, under the circumstances of this case, the trial court acted properly in excluding the alibi testimony.

Adopted on June 7, 1976, our state's notice of alibi discovery rules are similar in scope and wording to those used in the federal system and most states. See Fed. R. Crim. Proc., rule 12.1; see generally LaFave & Israel, Criminal Procedure (1985 Ed.) § 19.4 (b). Practice Book § 763 provides that "[u]pon written demand filed by the prosecuting authority . . . the

---

[1] The so-called "right to present a defense" has its origin in a criminal defendant's right to compulsory process under the sixth amendment to the federal constitution. *Washington* v. *Texas,* 388 U.S. 14, 18, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). This right applies in state criminal prosecutions by reason of the due process clause of the fourteenth amendment. *State* v. *McKnight,* 191 Conn. 564, 580, 469 A.2d 397 (1983).

defendant shall file within ten days, or at such other time as the judicial authority may direct, a written notice of his intention to offer a defense of alibi." The notice "shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely . . . ." Practice Book § 763. If the defendant files notice, the state "within ten days after filing of the notice, but in no event less than ten days before the trial unless the judicial authority otherwise directs, shall file a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied upon to rebut testimony of any of the defendant's alibi witnesses." Practice Book § 764. Upon failure of the defendant or the state to comply with these provisions, the trial court "may exclude the testimony of any undisclosed witness . . . ." Practice Book § 766.[2] "For good cause shown, the judicial authority may grant an exception to any of the requirements of [§§] 763 through 766." Practice Book § 767.

The defendant in this case concedes that he failed to comply with Practice Book § 763 and that Practice Book § 766 authorizes the trial court to exclude the testimony of undisclosed alibi witnesses.[3] The state filed

[2] Practice Book § 766 provides: "Upon the failure of either party to comply with the requirements of Sec. 762, the judicial authority may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at the scene of the alleged offense. Sec. 762 shall not limit the right of the defendant to testify in his own behalf."

[3] The defendant concedes technical noncompliance with Practice Book § 763 but raises two additional claims concerning his obligations under the Practice Book.

First, he claims that the state waived its right to object to his noncompliance. Essentially he argues that the state should have objected to the defendant's failure to file immediately after the ten day period for compliance lapsed. He also makes the argument that Judge Reynolds' order grant-

its demand for notice pursuant to § 763 on July 2, 1980. The trial court granted the state's demand on July 15, 1980. No response was filed by the defendant until August 19, 1982. It came ten days after the jury selection and seven days after the state had begun to present its case. On the date of the filing, the state objected to the late notice but discussion of the issue was postponed at the state's request until August 26. On that date, the state argued that the defendant should be precluded from calling the five alibi witnesses listed in the late notice because of the defendant's failure to comply with the state's demand. Defense counsel at trial admitted to the court that the filing did not comply with the Practice Book but explained that the defendant "did not want these people harrassed." No other reason for the delay was given.[4] No evidence was presented concerning any prejudice suffered by the state due to the delay and there was no request for a continuance to allow the state time to interview the witnesses. The court found that the defendant had "utterly failed to comply" with the applicable notice requirements and that he had not shown "good cause" why the court should grant an exception to the rule of exclusion.

ing the demand was open-ended and did not say exactly when the defendant had to comply. Thus, he claims, because the state did not request a specific time period, it waived its right to object. We find these arguments unpersuasive and see no reason why the state's attorney had to object at any time before the defendant's late filing.

Second, he claims that he was not required to give the state notice of certain witnesses that were produced to rebut a state witness' testimony that the defendant was at the bank on the morning of the robbery. However, we fail to see how these witnesses were anything but "alibi witnesses" within the meaning of Practice Book §§ 762 through 767. Therefore, the defendant was required to give the state notice of them pursuant to Practice Book § 763.

[4] The defendant's attorneys on appeal were different from his counsel at trial. At oral argument before this court, defense counsel suggested that trial counsel did not understand the applicable Practice Book sections. The defendant, however, has made no claim that he was denied effective assistance of counsel and there is no evidence in the record on appeal that the late filing was anything other than intentional.

The defendant claims that the Practice Book notice of alibi discovery rules are facially invalid because they restrict his privilege against self-incrimination and his right to due process. He does not question the well established rule that *reciprocal* alibi notice provisions are valid. See *Wardius* v. *Oregon,* 412 U.S. 470, 474–76, 93 S. Ct. 2208, 37 L. Ed. 2d 82 (1973); *Williams* v. *Florida,* 399 U.S. 78, 82, 90 S. Ct. 1893, 26 L. Ed. 2d 446 (1970); *Mayer* v. *Moeykens,* 494 F.2d 855, 859 (2d Cir.), cert. denied, 417 U.S. 926, 94 S. Ct. 2633, 41 L. Ed. 2d 229 (1974); *State* v. *Villafane,* 171 Conn. 644, 666–68, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977). He claims instead that Connecticut's alibi provisions are not truly "reciprocal" because the time period for disclosure favors the state.

We do not agree that the notice provisions favor the state and we therefore reject the defendant's fifth amendment and due process claims. The defendant argues that "[t]he state is given the entire period of from 10 days after its demand, usually right after arraignment, until 10 days prior to trial to investigate defendant's alibi. It is not required to disclose its rebuttal to the alibi until 10 days prior to trial, and not at all if defendant has not complied with Section 762." The defendant misinterprets the rules. Under Practice Book § 764, the state is required to file notice of its rebuttal witnesses within ten days after the defendant files his notice of alibi. The Practice Book notice provisions treat each party with an even hand and adequately implement the mandate of *Wardius* v. *Oregon,* supra, 475, that "discovery . . . be a two-way street." And while it is true that the state's duty to file is not triggered unless the defendant first files his notice; see *State* v. *Burns,* 194 Conn. 469, 477–79, 481 A.2d 1077 (1984); we fail to see how this unconstitutionally favors

the state when the defendant can compel disclosure by his own timely action.

The defendant also claims that the sanction of exclusion imposed by the trial court under Practice Book § 766 violated his sixth amendment rights to compulsory process and to present a defense. The United States Supreme Court has yet to address the sixth amendment implications of a state's power to enforce its discovery rules against a criminal defendant by excluding probative, relevant evidence. See *Williams* v. *Florida,* supra, 83 n.14. Other courts have held that use of such sanctions is not, per se, a violation of the sixth amendment. See, e.g., *State* v. *Dodd,* 101 Ariz. 234, 237, 418 P.2d 571 (1966); *State* v. *Roberts,* 226 Kan. 740, 744, 602 P.2d 1355 (1979); *Commonwealth* v. *Edgerly,* 372 Mass. 337, 343, 361 N.E.2d 1289 (1977); *State* v. *Smith,* 88 N.M. 541, 543, 543 P.2d 834 (1975); *State* v. *Flohr,* 301 N.W.2d 367, 371 (N.D. 1980); *Commonwealth* v. *Vecchiolli,* 208 Pa. Super. 483, 489, 224 A.2d 96 (1966); *State ex rel. Simos* v. *Burke,* 41 Wis. 2d 129, 139–40, 163 N.W.2d 177 (1968). We agree that the right to compulsory process is not absolute. The sixth amendment "does not confer the right to present testimony free from the legitimate demands of the adversary system." *United States* v. *Nobles,* 422 U.S. 225, 241, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975). "The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system [for a notice of alibi rule] which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence." *Williams* v. *Florida,* supra, 82. The notice of alibi rules place reasonable conditions on the presentation of alibi evidence and do not impermissibly restrict a criminal

defendant's right to compel attendance of witnesses. *Rider* v. *Crouse,* 357 F.2d 317, 318 (10th Cir. 1966); *Taliaferro* v. *State,* 295 Md. 376, 389, 456 A.2d 29 (1983); *State* v. *Smith,* supra; see generally LaFave & Israel, supra, § 19.4 (j).

We recognize, however, as have most courts addressing the issue, that exclusion of alibi witnesses may not be justified in all cases where the defendant has failed to comply with the discovery rules. The trial court must weigh the need for exclusion against the defendant's right to present a defense. See note, "The Preclusion Sanction—A Violation of the Constitutional Right to Present a Defense," 81 Yale L.J. 1342, 1353–56 (1972). The decision is within the sound discretion of the trial court and will turn on the facts of the particular case. Factors which the trial court must consider include: "whether the disclosure violation was technical or substantial, the timing of the ultimate disclosure, the reason, if any, for the violation, the degree of prejudice to the parties respectively offering and opposing the evidence, whether any resulting prejudice might be cured by a postponement and, if so, the overall desirability of a continuance." *Taliaferro* v. *State,* supra, 390–91; see also *United States* v. *Myers,* 550 F.2d 1036, 1043 (5th Cir. 1977); *Commonwealth* v. *LaFrennie,* 13 Mass. App. 977, 979, 432 N.E.2d 535 (1982); *People* v. *Merritt,* 396 Mich. 67, 82–83, 238 N.W.2d 31 (1976); *State* v. *Smith,* 17 Ohio St. 3d 98, 104, 477 N.E.2d 1128 (1985).

In considering whether the trial court in this case abused its discretion in ordering exclusion, we note at the outset that the defendant's violation was rather substantial. He filed his notice of alibi witnesses over two years late. He did so only after trial had begun and at a time when the state was close to concluding its case-in-chief. It is apparent from the record that the non-disclosure was intentional and not due to inadvertence.

Where disclosure is intentionally withheld, ordinarily there is no abuse of discretion in excluding proffered testimony. *People* v. *Douthit,* 51 Ill. App. 3d 751, 754–55, 366 N.E.2d 950 (1977) (defense counsel used the delay as a "tactical maneuver aimed at surprise"); *State* v. *Smith,* 17 Ohio St. 3d 98, 104, 477 N.E.2d 1128 (1985) (alibi evidence withheld "as a planned trial tactic"). As to the considerations of prejudice and the desirability of a continuance, there is very little evidence on the record to determine their applicability in this case. Neither the defendant nor the state requested an evidentiary hearing to consider the prejudice that noncompliance caused the state, or the prejudice to the defense caused by exclusion. Neither party requested a continuance to cure the prejudice caused by the delay. The defendant argues that the trial court had an independent duty to conduct an inquiry into any prejudice and to consider the alternate remedy of a continuance. The defendant further claims that failure to conduct such an inquiry constitutes an automatic abuse of discretion.

We reject the defendant's contention that the trial court had an independent duty to inquire about the circumstances surrounding the delay. Once the state has established that the defendant has failed to comply with the Practice Book discovery rules, it is incumbent on the defendant to make a showing of good cause under Practice Book § 767 or to request a remedy other than exclusion of the alibi testimony. If a hearing is needed to establish the reasons why exclusion is not warranted under the circumstances, the defendant has the initial burden of requesting such a hearing. If the trial court in its discretion orders such a hearing, the defendant must then establish the prejudice that exclusion will cause. The state will carry the burden of showing why its case was prejudiced by the delay. The rule of *Colter* v. *State,* 297 Md. 423, 466 A.2d 1286 (1983), on which

the defendant relies, does not hold to the contrary. In *Colter,* the Maryland Court of Appeals held that the trial court erred in applying an automatic rule of exclusion. Id., 429–31. It did not hold, as the defendant suggests, that a trial court is required to conduct an inquiry into prejudice or alternate remedies on its own accord.

On the basis of this record, we cannot say that the trial court abused its discretion in excluding the proffered alibi testimony. The defendant has failed to present us with the necessary facts to justify a finding that the sanction of exclusion was unwarranted. We refuse to require the trial court to conduct an independent inquiry into the necessity for exclusion and we will not presume that the trial court in this case abused its discretion under the circumstances. See *State* v. *Conrod,* 198 Conn. 592, 598, 504 A.2d 494 (1986).

## II

The defendant's second claim is that the trial court erred in failing to suppress in-court and out-of-court identifications of the defendant made by two witnesses to the robbery, Nina Mansourian and Beatrice Ararat. The defendant claims that the identifications were tainted by unnecessarily suggestive police procedures and were unreliable. We do not agree.

Mansourian was a teller in the bank on the day of the robbery. Upon entering the bank, the robber later identified as the defendant ordered Mansourian to lie down on the floor. She stayed there throughout the robbery and had the opportunity to view him for at least ten minutes at a distance of twenty feet. Afterwards, she described the robber to the police as about six feet tall, 165 pounds and thin, as having a mustache, dark hair and a thin face, and as wearing a baseball cap, jean-type pants and a nylon stocking over his face. She worked with a police artist but was unable to come up with an accurate composite sketch. The day of the rob-

bery, she also informally viewed a group of six to ten photographs at the bank, but the evidence is unclear whether the defendant's photo was among those viewed.[5]

The police came back to the bank one week after the robbery to see if any of the employees could identify the robbers from a photographic array. Mansourian was shown a total of twenty-four photographs arranged on three photoboards. Some of the pictures were black and white and some were color. All of the pictures were of white males and fifteen of the men had mustaches. From this array Mansourian selected a photo of the defendant and said that "the individual at the bank would look like him if the face was thinner." A week later, Mansourian went to the Cheshire police station and was shown another array. There were sixteen photos altogether, two pictures each of eight individuals. The photos were all color, were of white males with mustaches and were arranged on two photoboards. Mansourian again selected the photos of the defendant, but stated that her "recollection is that he

---

[5] For the purposes of analyzing the defendant's claim, we refer only to the two arrays viewed later by Mansourian. Mansourian testified that she viewed some photographs at the bank on the day of the robbery but that she could not recall whether the defendant's photograph was among those that she viewed. Police officers who were present at the time of the display did not know if the defendant's photo was shown to Mansourian. One officer did testify that two photos of the defendant were among a group of photos brought to the bank, but was not certain whether these photos of the defendant were shown to Mansourian. This factual uncertainty was apparently the result of the failure of the police to keep records of the viewing. The defendant claims that his picture in all probability was among those viewed by Mansourian. If we were to accept this interpretation of the facts, the extra viewing would lend more support to the defendant's claim that the procedure was suggestive. However, because we find that Mansourian's identification was reliable under the totality of the circumstances, the resolution of this factual discrepancy is not necessary. Furthermore, the existence of a third array does not necessarily mean that the procedure used to obtain the identification was inherently suggestive. See *Commonwealth* v. *LaPierre*, 10 Mass. App. 641, 644, 411 N.E.2d 1314 (1980).

had dark hair, and in the picture it . . . looked blond-ish." She also recalled the robber as being thinner than the man in the photo.

When the photo arrays were shown to Mansourian, the police did not in any way suggest to her which photo to select. The defendant's photo was the only one in both arrays. The photograph of the defendant in the first array was a black and white close-up shot while the photos in the second array were color half-body shots taken from a front and side view.

Ararat, on the day of the robbery, was in her car in the bank's parking lot when she saw the defendant. He was in the passenger seat of another car and was only six to seven feet away from her when she saw him. She later described him as about five feet seven inches to five feet eight inches tall, 30–33 years old, as having dark-blonde or light-brown hair, a slim build, and as wearing a baseball cap and a "zip-up" jacket. On the evening of the robbery the police came to her house and showed her the same three photoboards shown to Mansourian at the bank one week later. She selected the defendant's photo from the array and said that the man in the photograph was "very much like the man" in the car but that he was thinner than in the picture. A few days after the robbery, the police showed Ararat another array of photos which was the same as the second set shown Mansourian. She again selected the defendant's photograph and said that she had "no doubt" that the person depicted was the passenger in the car. The police did not suggest to her on either occasion which photo to select.

"We have often stated the test that governs the suppression of identification evidence derived from procedures that are challenged as violative of a defendant's constitutional rights to due process. In order to succeed on his motion to suppress, the defendant must

prove (1) that the identification procedures were unnecessarily suggestive, and (2) that the resulting identification was not reliable in the totality of the circumstances." *State* v. *Perez,* 198 Conn. 68, 73, 502 A.2d 368 (1985); *State* v. *Aversa,* 197 Conn. 685, 693–94, 501 A.2d 370 (1985); *State* v. *Parker,* 197 Conn. 595, 598, 500 A.2d 551 (1985); *State* v. *Hinton,* 196 Conn. 289, 292–93, 493 A.2d 836 (1985); *State* v. *Austin,* 195 Conn. 496, 499, 488 A.2d 1250 (1985). The defendant argued to the trial court in his motion to suppress that the recurrence of his photo in the challenged arrays was suggestive. The court held an extensive hearing on the motion and found that the procedure used by the police was not suggestive, and that, even if it had been, the identifications were reliable.

Although "we have recognized that pictorial recurrence can be suggestive in that it increases the risk of misidentification"; *State* v. *McKnight,* 191 Conn. 564, 572, 469 A.2d 397 (1983); *State* v. *Ledbetter,* 185 Conn. 607, 613, 441 A.2d 595 (1981); see *Simmons* v. *United States,* 390 U.S. 377, 383, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); the recurrent use of a defendant's photo in successive arrays is not presumptively suggestive. *United States* v. *Bowie,* 515 F.2d 3, 7–8 (7th Cir. 1975); *State* v. *Hinton,* supra, 294; *Commonwealth* v. *Paszko,* 391 Mass. 164, 169–70, 461 N.E.2d 222 (1984). In *State* v. *Hinton,* supra, we held that when the initial identification is made with a high degree of assurance and the photograph of the defendant in the second array is different and more recent than that used in the first, the procedure may not be suggestive. This is especially true where "the defendant makes no claim of improper procedure such as the 'unduly suggestive' police comments we criticized in *State* v. *Austin.*" Id.

The recurrent use of the defendant's photograph in this case cannot be said to be unnecessarily suggestive.

Both witnesses made positive identifications of the defendant in the first array. The defendant has not claimed that the arrays were in any way suggestive other than the fact that his photograph appeared in both series of photographs shown to the witnesses. The photographs of the defendant in the second array were wholly different from those used in the first. The photos in the second array were in color, portrayed two different angles of the defendant, showing him from the waist up and were taken a few days after the arrest. The photo in the first array was black and white, portrayed a front view of his face and shoulders, and was taken a month before the robbery. Under these circumstances, the use of the photographs in the second array could only have benefited the defendant by further testing the recollection of the witnesses. See *State* v. *Hinton,* supra. Furthermore, the fact that both witnesses commented that the defendant had been thinner at the time of the robbery is evidence that they had good recall of the crime itself and that they were therefore "unlikely candidate[s] for subliminal seductions." *State* v. *Perez,* supra, 75, quoting *State* v. *Ledbetter,* supra, 615.

Even if we were to assume that the procedure employed by the police was unnecessarily suggestive, we agree with the trial court that the identifications were reliable. The determination of reliability is made under the totality of the circumstances. *State* v. *Gold,* 180 Conn. 619, 655, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980); see also *Neil* v. *Biggers,* 409 U.S. 188, 199–201, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). Factors to consider include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the

confrontation." *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Aversa,* supra, 694; *State* v. *Hinton,* supra, 295–96.

Considering the totality of the circumstances, we conclude that the identifications in this case were reliable. Both Mansourian and Ararat made their identifications within two weeks of the robbery. Both exhibited a high degree of certainty that the individual in the photographs was the person that they had seen and both gave accurate descriptions to the police. Mansourian viewed the defendant in the brightly lit bank for at least ten minutes at a distance of about twenty feet. The defendant's face was covered with a nylon stocking at the time but Mansourian was still able to discern enough of his facial features to attempt a composite sketch. Ararat viewed the defendant in daylight while only six to seven feet away. The defendant did not have a stocking over his face at that time and the position of the cars enabled her to get a good look at him. Both witnesses also focused their attention on the defendant—Mansourian because he was in direct view and was issuing commands to the people in the bank, Ararat because she thought that her car had hit the defendant's vehicle.

On the basis of this record, we conclude that the defendant has failed to meet his burden of showing that the pictorial arrays used by the police were suggestive and that the identifications were unreliable. The defendant also raises a claim, however, that Mansourian's in-court identification was somehow tainted when the court allowed her to view the defendant and to look at the back of his head while making her identification. He argues that this procedure was suggestive and violated Practice Book §§ 775 through 778. This claim has no merit. The Practice Book sections referred to concern pretrial discovery and are inapplicable in this instance. Also, although an in-court viewing of the defendant by a witness making an identification may

be suggestive; see *State* v. *Fullwood,* 193 Conn. 238, 251, 476 A.2d 550 (1984); if the identification is found to be nevertheless reliable, as here, the in-court identification need not be suppressed. The fact that the defendant was made to turn his head has no special significance. See *Schmerber* v. *California,* 384 U.S. 757, 764, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966).

## III

The defendant's next claim is that the trial court erred in refusing to compel the state to elect between trying him for robbery in the first degree and larceny in the first degree. He argues that conviction and sentencing on both counts violated his constitutional right not to be placed twice in jeopardy for the same offense.

"The double jeopardy clause of the fifth amendment prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense. *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *State* v. *Devino,* 195 Conn. 70, 73, 485 A.2d 1302 (1985); *State* v. *Frazier,* 194 Conn. 233, 237–38, 478 A.2d 1013 (1984)." *State* v. *Thompson,* 197 Conn. 67, 72, 495 A.2d 1054 (1985). "Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." *State* v. *Devino,* supra, 74; see *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932); *State* v. *Frazier,* supra, 238. The state concedes in this case that both charges arose out of the same act. Our focus then is directed to whether the crimes are the same offense, or, in other words, whether "the proof of a violation of one statute necessarily requires proof of a violation of the other." *State* v. *McCall,* 187 Conn. 73, 90, 444 A.2d 896 (1982).

A review of the relevant statutes indicates that the crimes of robbery in the first degree[6] and larceny in the first degree[7] require proof of distinct elements. To convict the defendant of robbery, the state had to prove that "in the course of committing a larceny, he [used] or [threatened] the immediate use of physical force upon another person for the purpose of [taking the property]." General Statutes § 53a-133. Conviction for robbery in the first degree requires proof of varying degrees of force. General Statutes § 53a-134. The state has no burden to show the value of the items seized in the robbery. See *State* v. *Cannon*, 185 Conn. 260, 267, 440 A.2d 927 (1981). To convict the defendant of larceny in the first degree, the state had to show that

---

[6] General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

General Statutes § 53a-134 (a) provides: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

[7] General Statutes § 53a-119 provides in part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

General Statutes § 53a-122 at the time of the alleged offense provided: "A person is guilty of larceny in the first degree when: (1) The property or service, regardless of its nature and value, is obtained by extortion, or (2) the value of the property or service exceeds two thousand dollars."

the defendant committed larceny *and* that "the value of the property . . . [exceeded] two thousand dollars." General Statutes (Rev. to 1981) § 53a-122. Thus, while no dollar amount was needed for the robbery conviction, the state had to prove the value of the money taken from the bank in order to obtain a conviction on the charge of larceny in the first degree. Each statute requires proof of a fact which the other does not. See *Blockburger* v. *United States,* supra, 304. As a result, the defendant's double jeopardy claim must fail.

## IV

The defendant's fourth claim is that the trial court denied him his right to a fair trial and to appellate review when it did not order the court reporter to record final arguments. He claims that the state's attorney made improper comments to the jury and that he is precluded from raising such a claim on appeal because the arguments were not recorded. See *State* v. *Sawicki,* 173 Conn. 389, 396, 377 A.2d 1103 (1977). He concedes that no formal request for recordation was made, but argues that the trial court should, sua sponte, have ordered the arguments recorded because it "was fully aware of the potential for error." We do not agree. A court reporter is under no obligation to record arguments of counsel unless counsel specifically request recordation. General Statutes § 51-61 (a). The burden is on a party to make a request and the court is under no independent obligation to order recordation absent such a request. That the trial court may have been aware of the "potential for error" does not relieve the defendant of his burden. If no request is made, the defendant "must be deemed to have assented to the procedure employed." *State* v. *Killenger,* 193 Conn. 48, 59, 475 A.2d 276 (1984); *State* v. *Vitale,* 190 Conn. 219, 226, 460 A.2d 961 (1983). The defendant has thus waived his right to claim that improper comments were

made to the jury. *State* v. *Killenger,* supra; see also *State* v. *Frazier,* supra, 240.

## V

The defendant's remaining claims call into question the propriety of four of the trial court's evidentiary rulings. He argues that the trial court erred (1) in allowing an exhibit which was later excluded to be marked for identification, (2) in failing to strike the testimony of three witnesses who were unable to identify the defendant, (3) in admitting certain circumstantial evidence, and (4) in admitting a recorded statement as evidence of past recollection recorded. We are unpersuaded.

On appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. *State* v. *Sharpe,* 195 Conn. 651, 658–59, 491 A.2d 345 (1985); *State* v. *Piskorski,* 177 Conn. 677, 695, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). Rulings on such matters will be disturbed only upon a showing of clear abuse of discretion. *State* v. *Falcon,* 196 Conn. 557, 566, 494 A.2d 1190 (1985). If the ruling is found to be erroneous and the error does not involve the violation of a constitutional right, the burden is on the defendant to establish the harmfulness of the error. *State* v. *Gonzales,* 196 Conn. 115, 119, 491 A.2d 1067 (1985); *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980).

The defendant claims that the trial court erred in allowing the state to mark for identification a hat allegedly worn by the defendant's accomplice on the day of the robbery. The marking of the exhibit came during the redirect examination of a teller at the bank, Claudi DellAnno. The state's attorney did not offer the hat as a full exhibit at that time, but displayed it to the witness as an aid in helping her recall the hat worn by one of the robbers. When the hat was later offered in

evidence, it was excluded by the trial court on the ground that it was seized during the execution of an invalid search warrant. The defendant now claims that the trial court erred in allowing the exhibit to be marked, in admitting testimony concerning the hat and in failing to give a specific cautionary instruction to the jury.

"It is not error for the prosecution to lay the foundation for the introduction of evidence which is [later] excluded on objection." *United States* v. *Steel,* 458 F.2d 1164, 1166 (10th Cir. 1972). When a party intends to offer relevant evidence as a full exhibit, the trial court should allow the exhibit to be marked for identification as a matter of course. See *State* v. *Pepe,* 176 Conn. 75, 81, 405 A.2d 51 (1978); *Duncan* v. *McTiernan,* 151 Conn. 469, 470, 199 A.2d 332 (1964); cf. *State* v. *Schleifer,* 102 Conn. 708, 722, 130 A. 184 (1925). The state in this case had the hat marked for identification in anticipation of its being offered as a full exhibit because it was relevant to the issue of identity. Under these circumstances we cannot say that the trial court erred in permitting the hat to be marked for identification or in admitting the testimony of the witnesses who viewed the hat. As to the need for a specific cautionary instruction, the defendant failed to request such a charge under Practice Book § 852 and is now precluded from raising the claim on appeal. *State* v. *Killenger,* supra, 57; see Practice Book § 315.

The defendant next claims that the trial court erred in failing to strike the testimony of three witnesses who were not able to identify the defendant from a series of photographs. He claims that under General Statutes § 54-86c and Practice Book § 741[8] the state was pro-

---

[8] General Statutes § 54-86c (a) provides: "Not later than thirty days after any defendant enters a plea of not guilty in a criminal case, the state's attorney, assistant state's attorney or deputy assistant state's attorney in charge of the case shall disclose any exculpatory information or material which

hibited from offering the witnesses' testimony because it had failed to make the photographs available to him. We agree with the state, however, that the photographs had in fact been made available to him and that, as a result, the witnesses' testimony was properly admitted. The record shows that almost two years prior to trial the state had offered the photographs to the defendant. The defendant's correspondences with the state's attorney and the state's responses to the defendant's motion for discovery and inspection indicate that the photographs were available for inspection. The trial court therefore did not err in admitting the testimony of the three witnesses.

The defendant also takes issue with the trial court's rulings admitting various items and testimony. He claims that the following exhibits and testimony were irrelevant and prejudicial: a photograph showing five one dollar bills on the front seat of the car suspected to be the one used in the robbery, a blue baseball cap and a pack of Marlboro brand cigarettes found near the bank, testimony from a forensic expert, James McDonald, that he had found Marlboro cigarette butts and a brown cloth glove next to the alleged getaway

he may have with respect to the defendant whether or not a request has been made therefor. If prior to or during the trial of the case, the prosecutorial official discovers additional information or material which is exculpatory, he shall promptly disclose the information or material to the defendant."

Practice Book § 741 provides in relevant part: "Upon a written motion made by a defendant within ten days after the entry of a plea, the prosecuting authority, within the time set by the judicial authority, shall disclose in writing the existence of and allow the defendant to inspect, copy, photograph and have reasonable tests made on any of the following relevant materials:

"(1) Exculpatory information or material . . .

"(3) Adequately identified books, tangible objects, papers, photographs, or documents which are within the possession, custody, or control of any state agency, and which are material to the preparation of the defense or are intended for use by the prosecuting authority as evidence in chief at the trial . . . ."

car, and testimony from McDonald that he had found a cat whisker on the baseball cap. The cigarette butts, the brown glove and the cat whisker were not introduced as exhibits because they had either been inadvertently thrown away or misplaced.

We have often stated that: "Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue." *State* v. *Sharpe,* 195 Conn. 651, 659, 491 A.2d 345 (1985); *State* v. *Schaffer,* 168 Conn. 309, 317, 362 A.2d 893 (1975); *Federated Department Stores, Inc.* v. *Board of Tax Review,* 162 Conn. 77, 82, 291 A.2d 715 (1971). The main issue at trial was identification and the state sought to introduce the evidence in question to connect the defendant to the crime. The defendant had been linked to the getaway car by certain witnesses. The circumstantial evidence concerning the cigarettes, the glove, and the money strengthened the inference that the defendant had used the car to rob the bank. The glove matched the description of one used by a robber and the cigarette box found outside of the bank was the same brand as the cigarette butts found in the car and the same as that smoked by the defendant. It was also reasonable to infer that the money in the car was some of that stolen by the defendant. As to the cat whisker and the baseball cap, the state argued that the cap found was the one used by the defendant in the robbery and that the whisker was from his girlfriend's cat. Set in the context of the other evidence produced at trial, we conclude that these facts tended to establish identity and

to corroborate other direct evidence in the case. Thus, the trial court did not abuse its discretion in ruling that the evidence was relevant.

The defendant argues further, however, that even if the contested circumstantial evidence were relevant, it was more prejudicial than probative. As to the testimony of McDonald, he claims that the destruction of the physical evidence prejudiced his defense. As to the remaining evidence he contends that it was of a highly prejudicial character.

"In considering whether testimony concerning lost or destroyed evidence should be admitted, the trial court has to look to numerous factors including the reason for the unavailability of the evidence, the materiality of the evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, and the prejudice to the defendant caused by the unavailability of the evidence." *State* v. *Hamele,* 188 Conn. 372, 381, 449 A.2d 1020 (1982). On these facts we cannot say that it was error to admit the testimony on the lost or destroyed evidence. McDonald had personal knowledge as to the character of the evidence, he was cross-examined by defense counsel, the evidence was not destroyed intentionally, and the defendant did not suffer prejudice as a result of its unavailability. Likewise, we cannot say that the trial court abused its discretion in ruling the other evidence admissible. See *State* v. *Falcon,* 196 Conn. 557, 565–66, 494 A.2d 570 (1985).

The defendant's final claim is that the trial court erred in admitting a statement made by Carol Cacchillo as past recollection recorded. Cacchillo testified at trial that she saw a "mustard-colored" car on the premises where she lived. The state attempted to establish this car as the one used in the robbery. The state's attorney asked her when she had seen the car and she responded that it was "[a]round the third week in May." The state's attorney asked if she knew exactly what

day and she said that she did not know. She was then shown a written statement made by her to the Cheshire police department near the time of the robbery. After reviewing the statement, she testified that it was on May 17 that she saw the car. The state's attorney attempted to elicit details about her viewing the car but she testified that she could not remember. At this point, the state's attorney asked her a series of questions verifying the written statement and offered it into evidence as past recollection recorded.

The defendant argues that because the state's attorney had successfully refreshed the witness' memory, the statement was hearsay and did not qualify under the past recollection recorded exception to the hearsay rule. Generally, in order for the exception to apply, a witness must testify, inter alia, that she has no present recollection of the matter at hand. *Katsonas* v. *Sutherland Building & Contracting Co.,* 104 Conn. 54, 69, 132 A. 553 (1926); Tait & LaPlante, Handbook of Connecticut Evidence (1976 Ed.) § 11.21. If it is apparent that the witness cannot presently recall detailed facts concerning certain events, previous writings can be admitted as past recollection recorded despite the witness' general familiarity with those events. See *Papalia* v. *United States,* 243 F.2d 437, 441 (5th Cir. 1957); Fed. R. Evid., rule 803 (5) and advisory committee notes; 3 Wigmore, Evidence (Chadbourn Rev. 1970) §§ 734, 738. Reviewing the transcript of the witness' testimony in this case, we conclude that it was reasonable to believe that the witness simply could not remember certain detailed facts about the day she saw the alleged getaway car. As such, her past recorded statement was admissible and the trial court did not abuse its discretion in so ruling.

There is no error.

In this opinion the other judges concurred.