[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On August 27, 1982, the petitioner, Steven Boucino, was found guilty after a jury trial of the charges of robbery in the first degree in violation of Connecticut General Statutes Sec. 53a-134(a)(4) and larceny in the first degree in violation of Connecticut General Statutes Sec. 53a-122(a)(2). On September 23, 1982, he was sentenced to a term of imprisonment of not less than ten years no more than 20 years on the robbery count and a term of imprisonment of not less than five years no more than 20 years on the larceny count with the sentences ordered to run consecutively for a total effective sentence of not less than 15 years no more than 40 years. He now seeks, by this writ of habeas corpus, to set aside the verdict of guilty.
As a basis for the relief sought the petitioner claims ineffective assistance of counsel in violation of theSixth and Fourteenth Amendments of the United States Constitution and Article First and Eighth of the Connecticut Constitution. The petitioner further claims that the failure to raise claims of ineffective assistance of counsel is not a deliberate bypass of the appellate remedies which would preclude review in a habeas proceeding. See State v. Gethers,193 Conn. 526, 541, 480 A.2d 435 (1984). In State v. Leecan,198 Conn. 517, 541-542 (1986), in discussing the bypass issue, CT Page 3781 the court held that:
 "On further consideration, however, we have decided to lower the barrier to habeas corpus relief. It is preferable that all of the claims of ineffective assistance, those arguably supported by the record as well as others requiring an evidentiary hearing, be evaluated by the same trier in the same proceedings. . . . In view of this modification of our procedure in regard to ineffective assistance claims, we shall not review at this time even the portion of the defendant's ineffective assistance claims that he contends is adequately supported by the record. Though we have resolved his other claims of error, we believe that his ineffective assistance claims should be resolved, not in piece meal fashion, but as a totality after an evidentiary hearing in the trial court where the attorney whose conduct is in question may have an opportunity to testify."
It is clear from Leecan that there is no question of deliberate bypass where the issue is ineffective assistance of counsel.
LAW
In order for a petitioner to prevail on a claim of ineffective assistance of counsel, it is necessary that the petitioner meet the criteria established in Strickland v. Washington, 466 U.S. 668, 80 L.Ed.2d 674, 105 S.Ct. 2052. Strickland held that there are two components to a claim of ineffective assistance of counsel that have to be met in order to require reversal of a conviction:
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudices the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, . . . CT Page 3782 Unless a defendant makes both showings, it cannot be said that the conviction. . . resulted from a breakdown in the adversary process that renders the result unreliable. . . ." (emphasis provided) Strickland held that the role of the Court in an ineffective assistance claim to be as follows:
 "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreliable. . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption under the circumstances, the challenged action `might be considered sound trial strategy'. . . . Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."
In discussing the performance aspect of the claim of ineffective assistance of counsel, the Strickland court stated in part as follows:
 "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms. . . . In any case presenting an ineffective claim, the performance inquiry must be whether counsel's assistance was reasonable considering all of the circumstances. . . . Judicial scrutiny of counsel's performance CT Page 3783 must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'. . . There are countless ways to provide effective assistance in any given case. . . . Thus, a court deciding an actual ineffective claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts of omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of CT Page 3784 reasonable professional judgment."
BURDEN OF PROOF
In a habeas corpus petition, the plaintiff has the burden of proof of establishing the underlying facts that form the basis of the claimed violation by a fair preponderance of the evidence. Arey v. Warden, 187 Conn. 324, 331 (1982), Blue v. Robinson, 173 Conn. 360, 370 (1977).
FACTS
On July 15, 1980, the court granted a request by the State (pursuant to Section 763 of the Practice Book) for notice of alibi witnesses. On August 19, 1982, the petitioner filed a response to the State's request for notice of alibi witnesses, ten days subsequent to jury selection and seven days after the State had begun to present its case. The State objected to this late filing and argued that the defendant should be precluded from calling the five alibi witnesses listed in the late notice because of the defendant's failure to comply with the Practice Book.
Trial counsel, in the robbery and larceny charges, Attorney Flynn, in explaining the tardy disclosure of the alibi witnesses, made the following representation to the trial court, Hadden, J.:
 "My client, if called to the witness stand, would testify that on earlier occasions, when names have been disclosed to police authorities, people have been visited regularly by the police authorities day and night asking them question after question about the circumstances and information which has been disclosed to the police authorities. That he did not want these people harassed. This is the nature and extend of his testimony. That is a representation of what my client would testify to if he came to the witness stand."
The trial court, Hadden, J., made the following statement concerning the defendant, Mr. Boucino. "He deliberately and intentionally did not disclose the names of his alibi witnesses because he did not want his friends to be harassed by the police."
Judge Hadden testified at the habeas corpus hearing CT Page 3785 on July 26, 1989. He said that when Attorney Flynn was placing the reason on the record for the untimely disclosure of alibi witnesses, the court closely observed Mr. Boucino:
 "I was paying attention to Mr. Boucino as Mr. Flynn was making his comments and I was paying particular attention to Mr. Boucino because what Mr. Flynn was saying in my experience was somewhat unusual and I was well aware that he was making his statements of the significance of possibly ruling that a defendant in a criminal case not be allowed to put witnesses on the witness stand. That's what the State's Attorney was requesting that I rule. When Mr. Flynn made the remarks reflected in the transcript I was paying attention to Mr. Boucino because if Mr. Boucino had raised one finger in protest, I would have said to Mr. Flynn, `Mr. Flynn, you'd better check with your client with respect to what you're saying.' And that didn't happen. I was aware and anticipating something of that nature would occur and it did not. Had it occurred I would have interrupted Mr. Flynn and told him to check with his client. That never happened."
The petitioner argues that the failure of Attorney Flynn to disclose the alibi witnesses' identity was simply because it was "not a matter of urgency" to him. The Court is not persuaded by that argument. The Court enters a specific finding that trial counsel did not disclose the names of the alibi witnesses as a result of his client informing him that his client did not want his alibi witnesses harassed by the police.
 THE PETITIONER CLAIMS INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLES FIRST AND EIGHTH OF THE CONNECTICUT CONSTITUTION
The petitioner makes the following allegations in support of his claim of ineffective assistance of counsel:
(1) Petitioner's trial counsel failed to file with the Court a Notice of Alibi required by Section 762 of the Practice Book within the time specified by the Practice Book, CT Page 3786 and the order of the Court (Reynolds, J.) of July 15, 1980.
(2) Petitioner's trial counsel failed to make an oral offer of proof at the trial as to the anticipated testimony of the order of the Court; in failing to make a prompt investigation of the alibi defense; and in failing to make a complete record by offer of proof as to the anticipated ed testimony.
(3) Petitioner's trial counsel failed to conduct a proper investigation for the existence and/or identity and addresses of such alibi witnesses.
These claims will be discussed seriatim.
 (1) THE PETITIONER'S CLAIM THAT HIS TRIAL COUNSEL FAILED TO FILE WITH THE COURT A NOTICE OF ALIBI REQUIRED BY SECTION 762 OF THE PRACTICE BOOK WITHIN THE TIME SPECIFIED BY THE PRACTICE BOOK AND THE ORDER OF THE COURT (REYNOLDS, J.) OF JULY 15, 1980
A number of courts have addressed the issue of a claim of ineffective assistance of counsel where the claimed ineffectiveness arises out of trial counsel following the directions of his client.
Some courts have held that a claim of ineffectiveness arising out of following the request of a client is waived where the attorney follows the request of the client. Duncan v. State, 717 S.W.2d 345, 347 (1986); Ritter v. Thigpen, 668 F. Sup. 1490, 1502 (1987). Other courts have held that where a defendant preempts his attorney's strategy by insisting that a particular defense be followed, no claim of ineffectiveness can be made. See Harich v. Wainwright,813 F.2d 1082, 1089 (11th Cir. 1987); Duncan v. State, 717 S.W.2d 345,348 (Tex. Cir. App. 1986),; Autry v. McKaskle, 727 F.2d 358,362 (5th Cir. 1984). Other courts have taken the approach found in Chappee v. Vose, 843 F.2d 25, 33-34 (1st Cir. 1988), where the court stated in part as follows:
 Under the first part of the Strickland test, there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance. . . `considered (to be) sound trial strategy. . . .'" Strickland, 466 U.S. at 689, 104 S.Ct. at 2065
(quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed 83
CT Page 3787 (1955)). That counsel's selection of a stratagem turns out to have been stupid does not render the game plan "unreasonable" as a matter of law. See United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978) (choice between trial tactics, though appearing plainly unwise in retrospect, not tantamount to "constitutionally-deficient representation"). So, too, the fact that counsel's scheme flouted procedural rules or was unethical does not automatically propel petitioner past the barrier. If unprofessional conduct (say, shortstopping a rule of court or subornation of perjury), deliberately employed as a means of thwarting the prosecution, was to be deemed per se ineffective assistance, then the accused would be placed in an idyllic situation. If counsel successfully cut the corner, the client would unfairly benefit. On the other hand, if counsel was caught in the act and the stratagem aborted, then the client could fall back on a claimed abridgement of his sixth amendment right to reasonably proficient representation. Either way, the accused would reap a windfall. The notion that this sort of "heads — I — Win, tails — you — lose" approach is doctrinally required by the sixth amendment is, we suggest, "a proposition more suitable to Lewis Carroll" than to the lexicon of federal constitutional law. See United States v. Ven-Fuel, Inc. 758 F.2d 741, 763 n. 17 (1st Cir. 1985), citing L. Carroll, Alice's Adventures in Wonderland 8-9 (Delacorte Press. ed. 1966). We emphatically decline petitioner's invitation that we adopt such a surreal rule.
 In this case, the state courts' finding that defense counsel's concealment of the expert witnesses was a planned maneuver enjoys abundant record support and is entitled to deference. Rushen v. Spain, 464 U.S. at 120, 104 S.Ct. at 456; Sumner v. Mata, 449 U.S. at 547-51, 101 S.Ct. at 769-71. Chappee, of course, was bound by such a forethought tactical CT Page 3788 decision. See Taylor v. Illinois, 108 S.Ct. at 657.
This Court holds that the proper standard to apply in a claim of ineffective assistance of counsel is the performance and prejudice standard under Strickland.
A. THE PERFORMANCE PRONG OF THE PETITIONER'S CLAIM The petition makes the following argument in support of this claim:
 The foregoing testimony clearly demonstrates that the petitioner's claim that Flynn was ineffective in failure to file the alibi notice timely establishes ineffective assistance of counsel. The failure to follow the strictures of the Practice Book is a clear breach of professional responsibility, especially when the rules regarding that do not lie within the amorphous traditions of the Bar, but are specifically set forth in the provisions of the Connecticut Practice Book since 1976. Attorney Flynn testified that he was familiar with the Connecticut Practice Book rules (Deposition, p. 8). Yet despite that knowledge of the Practice Book rule, Attorney Flynn's testimony both at his deposition and at trial do not attempt to offer any justification for his failure to act in this regard. Rather, Attorney Flynn clearly has testified that the reason for his failure to disclose the alibi witnesses' identity is simply because it was "not a matter of urgency" to him.
The Court is not persuaded by that argument.
The performance standard requires that in assessing a decision not to disclose the names of witnesses until the commencement of trial that the court must make "every effort. . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenge conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland v. Washington, 466 U.S. 689, 104 S.Ct. 2065. The appropriate legal standard is not error-free representation, but "reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland v. Washington, 466 U.S. 691, 104 S.Ct. 2066. CT Page 3789 Accordingly, it is necessary to consider not only the reason of trial counsel in delaying the disclosure of alibi witnesses names, but also to review the status of the law as it existed at that time.
As stated earlier, trial counsel did not disclose the names of the alibi witnesses as a result of his client informing him that his client did not want his alibi witnesses harassed by the police.
In appealing his conviction, the petitioner made the following six arguments in claiming that the trial court erred in excluding testimony of the petitioner's alibi witnesses:
 (1) The record is silent as to any order by Judge Reynolds setting forth a date by which compliance was required. A strict reading of P.B. Section 762 demonstrates that no order was needed. By the time the State had the matter docketed for argument, and Judge Reynolds entered his order, the required Notice was technically three days late. Thus, in the first instance the State must be deemed to have waived any claim or requirement that the defendant strictly adhere to the 10 day rule of Section 762.
 (2) Further, since the time for filing such Notice is within 10 days of demand or at such time as the judicial authority may direct, the state must be viewed, by its actions in seeking a court order, to be bound by the "such other time" language of Section 762.
 (3) Further, since the Court's authority under Section 762 is restricted to only setting time limits for compliance, that must be what was contemplated by the State's request for judicial action. Thus, it was incumbent on the State to ask the Court to set some time limit for compliance, having waived the 10 day rule. Since such a fundamental right of the defense, State v. McKnight, 191 Conn. 564
(1983), the State cannot presume that the defendant must automatically file within 10 days of the order granting the State's demand. No authority for that exists. CT Page 3790
 (4) It is submitted that the preclusion sanction violates the Sixth Amendment right to compulsory process.
 (5) A cogent argument is advanced by another author that apart from constitutional objections, witnesses will be reluctant to assist the defense if they know their names will be revealed to the state, because of their "real or imagined" beliefs that they will be prior to trial.
 (6) LaFave and Israel note that there is general agreement among the appellate courts that a finding of prejudice is a prerequisite to imposing the exclusion sanction.
Having failed in those arguments on his direct appeal, State v. Boucino, 199 Conn. 207 (1986), the petitioner now argues that his trial counsel should have followed the strictures of the Practice Book. Strickland teaches that a fair assessment of the attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time. The arguments made in the direct appeal in support of the claim that the trial court erred in excluding the testimony of the defendant's alibi witnesses were reasonable arguments to make. In reconstructing the circumstances of trial counsel's challenged conduct and evaluating that conduct from trial counsel's perspective at the time, it would be reasonable to assume that the alibi witnesses in question would have been allowed to testify.
The Court therefore concludes that the petitioner has failed to overcome the strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance.
B. THE PREJUDICE PRONG OF THE PETITIONER'S CLAIM
The petitioner makes the following argument in support of this claim:
 In the instant case, the petitioner submits that the prejudice to the petitioner's case is clear upon the face of this record. The alibi testimony CT Page 3791 anticipated from Mr. Knotowicz and Mr. Bernabe clearly would place Mr. Boucino distant in both time and geography from the scene of the robbery of the bank in Cheshire on May 22, 1980. Morever, Mr. Bernabe and Mr. Knotowicz both had first hand knowledge of the presence of Boucino at Torrington and were available to testify at the Superior Court in New Haven. Both witnesses were present in the court for more than one day in the custody of Howard Lawrence, a member of Attorney Flynn's staff. The availability of the witnesses is beyond question. Moreover, the weight of their testimony clearly would have cast into doubt the State's proof that Boucino committed the bank robbery. Since the identification by Nina Mansourian and Beatrice Ararat was less than positive, the probative value of the alibi witnesses cannot be gainsaid.
The Court is not persuaded by that claim.
The notice of the defense of alibi filed by the petitioner in the underlying criminal trial claims that he would establish the defense of alibi by showing that his location at the time of the offense was at the Gold Bar Restaurant in Torrington, Connecticut, and that the witnesses who would establish that defense included Louis Koosis, David Knotowitz, Joseph Bernabe, and Terry Raimo.
The substance of the testimony of those individuals at the habeas corpus trial was as follows:
Louis Koosis, one of the so-called alibi witnesses testified as follows:
Q. Now in 1982 during the trial did you have at that time a recollection of the specific date in May of 1980 that Mr. Boucino was at the Gold Bar?
A. No ma'am.
Q. You did not. So on the date when you went to New Haven to the courthouse you did not have any specific information about the date that Mr. Boucino was in the Gold Bar?
A. No, ma'am. I couldn't remember a date or time. (T. 7-25-89 at p. 26). CT Page 3792
David Knotowitz testified that he could not remember the date in 1980 that the petitioner was at the Gold Bar. He said he was not sure if he was ever capable of pinpointing the specific day. (T. 8-21-89 at p. 4).
Joseph Bernabe, another alleged alibi witness, was unable to testify at the habeas hearing but through State Police Detective James Cavanaugh his statements were received into evidence. Mr. Cavanaugh testified that he had a conversation with Bernabe on June 16, 1989 and that Bernabe recalled going to the Gold Bar with Boucino to look at the bar in 1980 and he thought it was on a weekend. The day of the bank robbery, May 22, 1980, was a Thursday.
Terry Raimo indicated in his testimony that around the start of Boucino's 1982 trial John Paul Reid, a friend of Boucino's told him he was needed to act as an alibi witness at the trial.
He said that Reid told him what to say:
"Q Did he tell you to say that you were with Mr. Boucino at a different place other than the bank that was robbed?
A In so many words, yes.
Q Now, when Mr. Reid told you to say this, was any of it true?
A If those are the dates you're saying that I wasn't in the country, then it probably wasn't true for those dates.
Q May 22, 1980.
A Right."
Raimo said that in 1982 he was aware that the alibi testimony that he would present if called to the stand was fabricated:
"Q At the time in 1982 when you were in Flynn's office did you know that what you were asked to say was a lie?
A Yes, to a certain extent.
Q To what extent?
A To the extent that I wasn't one hundred (100%) percent positive of the dates and times." CT Page 3793
And in further explanation Raimo said that in 1982 at trial time he was totally uncertain of any dates in 1980 when he saw
Mr. Boucino.
The Court finds that none of the so-called alibi witnesses would have been able to place the petitioner at a location different from the scene of the crime. The Court therefore concludes that the petitioner has failed to prove any prejudice from the failure of his trial counsel to file the notice of alibi within the time specified by Section 762 of the Practice Book.
 (2) THE PETITIONER'S CLAIM THAT HIS TRIAL COUNSEL FAILED TO MAKE AN ORAL OFFER OF PROOF AT THE TRIAL AS TO THE ANTICIPATED TESTIMONY OF THE ALIBI WITNESSES, HE FAILED TO CALL THESE WITNESSES AT TRIAL, IN THE ABSENCE OF THE JURY, OR AT THE MOTION FOR NEW TRIAL TO MAKE A COMPLETE RECORD OF THEIR ANTICIPATED TESTIMONY
The petitioner makes the following argument regarding this claim:
 In further support of the Petitioner's position on this issue is the opinion of the Connecticut Supreme Court itself in the direct appeal. The Supreme Court noted that "neither the defendant nor the State requested an evidentiary hearing to consider the prejudice that non-compliance caused the State or the prejudice to the defense caused by the exclusion." Id. at 215. One can infer from this comment that the burden was upon the defendant to place the witnesses on the stand and to have the exact nature and extent of their testimony apparent before Judge Hadden so that his exercise of discretion could be based upon a complete and entire record including the ability of the trial judge to weigh the credibility of the defense witnesses. No such action was taken by Attorney Flynn. Morever, the Supreme Court has also noted the following: "The defendant has failed to present us with the necessary facts to justify a finding that the sanction of exclusion was unwarranted." Id. at 216. CT Page 3794 Since it is the duty of the trial attorney to place the "facts" on the record, and since any Appellate Court is precluded from finding facts that are not apparent on the face of the record, the failure of Attorney Flynn to make an adequate record by way of an individual offer of proof as to each of the witnesses who later testified before this court lends cogent support for the Petitioner's position that Attorney Flynn's failure to make an individual offer of proof constitutes ineffective assistance of counsel. Where the Connecticut Supreme Court has already found by inference that trial counsel was ineffective in this particular fashion, it is not for this court to reach a contrary conclusion.
The Court is not persuaded by that argument.
The petitioner seeks to use the benefit of the distorting effects of hindsight in order to succeed on this claim of ineffective assistance of counsel. Strickland teaches that hindsight must be eliminated and it is necessary to reconstruct the circumstances of counsel's challenged conduct and to evaluate that conduct from counsel's perspective at the time. In State v. Boucino, 199 Conn. 207 (1986), the petitioner, in his direct appeal, claimed that the Practice Book notice of alibi discovery rules were facially invalid because they restrict his privileged against self-incrimination and his right to due process. The petitioner further claimed that the trial court had an independent duty to conduct an inquiry into any prejudice and to consider the alternate remedy of a continuance. The defendant further claimed that failure to conduct such a inquiry by the trial court constituted an automatic abuse of discretion. Having been unsuccessful in those legal arguments on direct appeal, the petitioner now seeks to use the holding in his direct appeal that it was incumbent upon him to make a showing of good cause and that he had the initial burden of requesting a hearing to make such a showing as a basis for his claim of ineffectiveness of counsel. If the petitioner had been successful in his direct appeal arguments that the Practice Book notice of alibi discovery rules are facially invalid because they restrict his privilege against self-incrimination and his right to due process or if he had been successful in his direct appeal argument that the trial court had an independent duty to conduct an inquiry into any prejudice and to consider the alternate remedy of a continuance, that in CT Page 3795 either event, the petitioner would have been successful in his direct appeal. Considering all of the circumstances of the case and the legal arguments that were available as a result of not being allowed to present his alibi witnesses, the performance of his attorney was reasonable under prevailing professional norms and the petitioner has failed to rebut the strong presumption that his trial counsel's conduct fell within the wide range of reasonable professional assistance. The reasonableness of trial counsel's actions cannot be judged on the basis of hindsight.
In addition, the petitioner has failed to meet his burden of proof of showing any prejudice from failing to call the alibi witnesses in the absence of the jury to make a complete record of their anticipated testimony.
 (3) THE PETITIONER'S CLAIM THAT TRIAL COUNSEL FAILED TO CONDUCT A PROPER INVESTIGATION FOR THE EXISTENCE AND/OR IDENTITY AND ADDRESSES OF ALIBI WITNESSES
Petitioner makes the following argument in support of his claim:
 Secondly, the Petitioner further submits that irrespective of the claims made heretofore, this Court can find for the plaintiff and grant the Application for the Writ of Habeas Corpus solely on the basis of Attorney Flynn's failure to promptly investigate the alibi defense. To reiterate, the Petitioner and Attorney Flynn both agree that the Petitioner made the existence of an alibi defense known to Attorney Flynn at an early point in time. While the specifics of the exact date may vary with the testimony of the Petitioner and Attorney Flynn, it is axiomatic that the trial counsel has a duty to promptly investigate all possible defenses. Siemon v. Stoughton, 184 Conn. 547 (1981). While this duty may await the convenience of the trial attorney, when the State has filed a motion for such disclosure and the Court has granted an order to that effect, the strictures of the Practice Book require that the defense attorney act promptly in resolving this issue. Sadly for the Petitioner, Attorney Flynn did not so act in this case. No amount of investigation CT Page 3796 after the running of time limitations of the Practice Book will efface the prejudice due to a criminal defendant if subsequently the trial court refuses to allow in the testimony of alibi witnesses as a matter of discretion. Thus, only prompt investigation within the time strictures of the Practice Book are sufficient to the effective assistance of counsel. As Attorney Flynn said in his deposition, no investigation of the alibi began until the trial in New Haven started (Deposition, p. 53). It is beyond doubt that the Petitioner specifically alerted Attorney Flynn to the existence of the alibi witnesses. In this context the words of State v. Talton, 197 Conn. 280 (1985) are instructive:
 "The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense. Defense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial."
Id. at 297.
 The latter portion of the Talton quote is significant since Attorney Flynn did not conduct a reasonable investigation and has no adequate reason for the failure to follow the strictures of the Connecticut Practice Book. Accordingly, the Petitioner submits that he has established by a preponderance of the evidence that Attorney Flynn was ineffective as his trial attorney on the basis of his failure to investigate promptly the issue of alibi defense and to promptly respond the Judge Reynolds' Order of July 15, 1980.
The Court is not persuaded by that argument.
First, there was a reasonable explanation by trial counsel regarding the alibi witnesses and the failure to disclose those witnesses. That explanation was that his client did not want the alibi witness names disclosed because of a concern of harassment by the police. Secondly, for all of the reasons advanced by the petitioner in his direct appeal, it was reasonable for his trial counsel to assume that he would still be able to use the alibi witnesses at trial, even though their names had been disclosed late. Lastly, there has been no showing that the testimony of the alibi witnesses would have been helpful in establishing the asserted alibi defense.
The petitioner has therefore failed to establish either the performance prong or the prejudice prong of his claim.
CONCLUSION
The petitioner has failed to establish either the performance prong or the prejudice prong of any of his claims of ineffectiveness of counsel.
ORDER
The petition for writ of habeas corpus is dismissed.
AXELROD, J. CT Page 3797